931 P.2d 739

**CONOCO, INC., Plaintiff–Appellant,**

v.

**STATE of New Mexico TAXATION AND REVENUE DEPARTMENT,
Defendant–Appellee.**

**No. 15372.**

Court of Appeals of New Mexico.

May 1, 1995.

Certiorari Granted June 14, 1995.

Curtis W. Schwartz and Timothy C. Holm, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Santa Fe, for plaintiff-appellant.

Tom Udall, Atty. Gen. and Bruce J. Fort, Sp. Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

APODACA, Chief Judge.

The issues in this appeal involve the New Mexico Taxation and Revenue Department's (the Department) denial of Conoco, Inc.'s (the taxpayer) refund claims for certain tax years and the Department's imposition of an assessment for the tax year 1991.

The taxpayer sought a refund of corporate income taxes paid to the State of New Mexico for the tax years 1988, 1989, and 1990, based on what its tax liability would have been had foreign dividends and Subpart F [1] income been excluded from its apportionable tax base. The Department denied the taxpayer's claims for refunds. The taxpayer also reduced its tax payments for the 1991 tax year on the same basis, prompting the Department to issue Assessment No. 1,638,288 against the taxpayer for that year.

After a formal hearing, the Department's hearing officer denied the taxpayer's claims for refunds and reduced the Department's assessment against the taxpayer consistent with modifications to the standard apportionment formula allowed for previous years. The taxpayer appeals.

We conclude that the hearing officer properly denied the taxpayer's claims for refunds. We also conclude that the hearing officer properly reduced the Department's assessment against the taxpayer for the 1991 tax year. We thus affirm.

## I. BACKGROUND

### A. Conoco, Inc.

The taxpayer is a wholly owned subsidiary of E.I. DuPont de Nemours and Company (DuPont), a Delaware corporation. The taxpayer's headquarters and principal place of business are located in Houston, Texas. DuPont and its domestic and foreign subsidiaries,[2] including the taxpayer, constitute a unitary business enterprise. Part of DuPont's unitary business enterprise consists of integrated oil and gas activities that are conducted on a worldwide basis, primarily through the taxpayer.

The taxpayer itself conducts business in all fifty states and in the District of Columbia. It also conducts business activities worldwide through the ownership of stock in domestic and foreign subsidiaries. The taxpayer owns one-hundred percent of the stock of most of its foreign subsidiaries. Although its subsidiaries conduct business in approximately twenty-five countries, they typically conduct business only in the country in which they were incorporated. The taxpayer receives dividends from both its domestic and foreign subsidiaries.

### B. Conoco's New Mexico Tax Returns

In tax years 1988, 1989, and 1990, without petitioning the Department as required by NMSA 1978, Section 7-4-19 (Repl. Pamp.1993),[3] the taxpayer applied the De-

---

1. "Subpart F" refers to Sections 951-964 of the Internal Revenue Code (I.R.C.). *See* 26 U.S.C. §§ 951-964 (1988). Certain types of income, including, among other things, income earned by captive insurance companies, investment companies, and other controlled foreign corporations of a domestic (United States) company in tax haven countries is deemed to be distributed to the United States parent corporation even though no formal dividend is paid. *See NCR Corp. v. Taxation & Revenue Dep't,* 115 N.M. 612, 618-20, 856 P.2d 982, 988-90 (Ct.App.), *cert. denied,* 115 N.M. 677, 857 P.2d 788 (1993), *cert. denied,* 512 U.S. 1245, 114 S.Ct. 2763, 129 L.Ed.2d 877 (1994). For purposes of this appeal, the parties have stipulated that such income should be treated as a foreign dividend.

2. For purposes of this opinion, "domestic subsidiaries" means subsidiary corporations incorporated in the United States whose operations are within the United States, and "foreign subsidiaries" means subsidiary corporations organized under the laws of foreign countries whose operations are outside of the United States.

3. Section 7-4-19 provides:

   If the allocation and apportionment provisions of the Uniform Division of Income for Tax Purposes Act [(UDITPA), NMSA 1978, §§ 7-4-1 through 7-4-21 (Repl.Pamp.1993)] not fairly represent the extent of the taxpayer's business activity in [New Mexico], the taxpayer may petition for, or the department may require, ... the inclusion of one or more addi-

troit formula of factor relief [4] to its tax base in calculating its New Mexico tax liability. In late 1992, shortly after the United States Supreme Court's decision in *Kraft General Foods v. Iowa Department of Revenue & Finance*, 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992), the taxpayer filed amended New Mexico corporate income tax returns for the tax years 1988, 1989, and 1990. Additionally, in its 1991 return, the taxpayer totally excluded foreign subsidiary dividends as well as domestic subsidiary dividends from its tax base. Before filing its 1991 return, the taxpayer made estimated tax payments for the tax year 1991, which were $93,569 more than the tax computed for tax year 1991, based on the exclusion of foreign subsidiary dividends from the tax base. In the amended returns, the taxpayer contended that tax refunds were due because the Supreme Court's decision in *Kraft* required the Department to allow the taxpayer to deduct both domestic and foreign subsidiary dividends. The exclusion of foreign subsidiary dividend income for tax years 1988, 1989, and 1990, resulted in even lower taxes for the taxpayer than did the self-applied Detroit formula. The taxpayer claimed refunds in the following amounts: 1988: $87,064; 1989: $33,474; 1990: $144,854; and 1991: $93,569.

The taxpayer applied the Detroit formula in its calculations of its initial filings for tax years 1988, 1989, and 1990, and paid its taxes on that basis. · Application of the Detroit formula, as proposed by the Department, to those tax years resulted in the same amount of taxes due as the taxpayer had already paid, but higher taxes than the taxpayer claimed on its amended returns based on the total exclusion of foreign subsidiary dividends from the tax base. Consequently, the Department denied the taxpayer's claims for refunds for the tax years 1988, 1989, and 1990. For tax year 1991, the Department also denied the taxpayer's claim for a refund in the amount of $93,569 based on the exclusion of foreign subsidiary income. The Department then issued Assessment No. 1,638,288 against the taxpayer, asserting that corporate income tax, penalties,

and interest for the 1991 tax year were due. The taxpayer protested both the refund denials and the assessment, pursuant to NMSA 1978, Section 7–1–24 (Repl.Pamp.1993). A formal administrative hearing before the hearing officer was held. In his decision, the hearing officer upheld the Department's application of the Detroit formula to calculate the taxpayer's New Mexico corporate income tax for tax years 1988–1991. The taxpayer appeals this determination.

## II. STANDARD OF REVIEW

■ On review, this Court must determine whether the hearing officer's decision was: (1) arbitrary, capricious, or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law. NMSA 1978, § 7–1–25(C) (Repl.Pamp.1993). Judicial review of administrative decisions is based on the whole record, *see* § 7–1–25(A); *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 293, 681 P.2d 717, 719 (1984); *Wing Pawn Shop v. Taxation & Revenue Dep't*, 111 N.M. 735, 739, 809 P.2d 649, 653 (Ct.App.1991), requiring this Court to consider not only evidence in support of one party's contention, but also to look at evidence that is contrary to the finding, *Trujillo v. Employment Sec. Dep't*, 105 N.M. 467, 469, 734 P.2d 245, 247 (Ct.App.1987). We "must then decide whether, on balance, the agency's decision was supported by substantial evidence." *Id.*; *see Wing Pawn Shop*, 111 N.M. at 739, 809 P.2d at 653.

## III. DISCUSSION

■ This appeal concerns the application of the Foreign Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3, to New Mexico's statutory system of corporate income tax. The New Mexico corporate income tax statute uses the federal tax code's definition of "net income" with certain adjustments. Like the federal scheme, New Mexico allows corporations to take a deduction for dividends received from domestic subsidiaries, but not from foreign subsidiaries. Unlike the federal scheme,

---

tional factors which will fairly represent the taxpayer's business activity in this state.

**4.** *See infra* Section III.C.3 for a complete discussion of the Detroit formula of factor relief.

however, New Mexico does not allow a credit for taxes paid to foreign countries.

### A. Generally

To provide a context for understanding the various allowable filing methods and their relationship to the Foreign Commerce Clause issues raised by this case, we deem it necessary to review the interrelationship between the Foreign Commerce Clause, the Due Process Clause, and New Mexico's ability to tax income generated in foreign commerce.

■ It is fundamental under both the Due Process Clause and the Commerce Clause of the United States Constitution that a state may not, when imposing an income-based tax, tax value earned outside of its borders. *See ASARCO Inc. v. Idaho State Tax Comm'n,* 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982). When dealing with income that has been earned by a multistate and multinational taxpayer, determining what income has been earned by that taxpayer within a particular state can be extremely complicated and has generated a significant amount of constitutional litigation. *See, e.g., Container Corp. of Am. v. Franchise Tax Bd.,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983); *F.W. Woolworth Co. v. Taxation & Revenue Dep't,* 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982); *Exxon Corp. v. Wisconsin Dep't of Revenue,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980); *Mobil Oil Corp. v. Commissioner of Taxes of Vt.,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). Because of the difficulty of precisely measuring a state's properly apportioned share of a multijurisdictional taxpayer's income, the United State Supreme Court has long held that the Constitution imposes no single formula on the states, *Wisconsin v. J.C. Penney,* 311 U.S. 435, 444–45, 61 S.Ct. 246, 85 L.Ed. 267 (1940), and has placed upon a taxpayer challenging a state's formula the burden of showing by clear and cogent evidence that a state tax results in the taxation of extraterritorial values. *Container Corp.,* 463 U.S. at 170, 103 S.Ct. at 2942–43 (quoting *Moorman Mfg.,* 437 U.S. at 274, 98 S.Ct. at 2345).

Historically, states attempted to account for their share of taxable income based upon systems of separate accounting, whereby a company's income earned within the geographical boundaries of the state was determined based on formal corporate entities or on an attempt to segregate transactions conducted within the state. This methodology, called separate accounting, has fallen into disfavor because it was subject to manipulation and imprecision and, significantly, either ignored or failed to capture the many subtle and often unquantifiable transfers of value that take place among the components of a large, complex enterprise. *See generally Mobil Oil,* 445 U.S. at 438–39, 100 S.Ct. at 1232–33.

■ As a result of the inadequacy of the separate accounting concept, the unitary business concept evolved. The unitary business principle generally disregards territorial boundaries and corporate structure issues. The unitary concept requires viewing a business enterprise as a single unit irrespective of whether the enterprise crosses geographic boundaries or its business is conducted through separate corporate entities. Once the scope of a unitary business is defined, the taxable income of the total unitary enterprise is determined, and an apportionment formula is applied to approximate the unitary business income that is reasonably related to the business' activities conducted within the taxing jurisdiction based upon various objective measures of the taxpayer's activities both within and without the taxing jurisdiction. The Supreme Court long ago upheld the constitutionality of the basic unitary business concept. *See, e.g., Mobil Oil,* 445 U.S. at 439, 100 S.Ct. at 1232–33; *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931); *Bass, Ratcliff & Gretton, Ltd. v. State Tax Comm'n,* 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282 (1924); *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165 (1920). In other words, it is the unitary business principle that provides the constitutional basis for the use of an apportionment formula by the states to apportion

to the states their appropriate share of corporate income.

### B. Federal Tax Returns

■ As defined in I.R.C. Section 1501, DuPont filed consolidated federal corporate income tax returns with its affiliated group, which included the taxpayer, for the tax years 1988, 1989, 1990, and 1991. *See* 26 U.S.C. § 1501 (1988). A consolidated return reports the income of a parent corporation and members of its affiliated group. *See id.* DuPont received dividends from both its domestic and foreign subsidiaries during those years. In calculating its federal taxable income in accordance with federal law, DuPont deducted the dividends that the taxpayer received from its domestic subsidiaries, but not the dividends received from its foreign subsidiaries. *See* 26 U.S.C. § 243 (1988).

DuPont, however, claimed a credit against its federal tax liability with respect to taxes that it and its foreign and domestic subsidiaries paid to foreign countries.

### C. New Mexico Tax Returns
#### 1. Reporting Methods

The taxpayer and DuPont elected to file separate New Mexico corporate income tax returns for the same years using the "separate-entity reporting" method. This method of reporting, however, is only one of four reporting methods New Mexico allows corporate taxpayers to use when filing their initial New Mexico income tax returns. *See* Regulation CIT 9:2.[5] New Mexico allows corporate taxpayers to elect among two versions of separate accounting, the combination of unitary corporations, or the federal consolidated group reporting methods. *Id.*

#### 2. Apportionment of New Mexico Taxable Income

■ After a taxpayer elects which reporting method it will use, a three-factor apportionment formula is then applied to determine the portion of income subject to New

Mexico taxation for corporations having income from both within and without New Mexico. *See* UDITPA §§ 7–4–1 through 7–4–21; *NCR Corp.*, 115 N.M. at 615, 856 P.2d at 985. The UDITPA formula creates three factors: (1) the "property factor," which is the average value of the taxpayer's real and tangible personal property owned or rented in New Mexico (the property numerator) divided by the average value of the taxpayer's real and tangible personal property owned or rented everywhere (the property denominator), Section 7–4–11; (2) the "payroll factor," which is the total amount paid by the taxpayer in New Mexico as compensation (the payroll numerator) divided by the total compensation paid everywhere by the taxpayer (the payroll denominator), Section 7–4–14; and (3) the "sales factor," which is the total sales of the taxpayer in New Mexico (the sales numerator) divided by the total sales of the taxpayer everywhere (the sales denominator), Section 7–4–16. These three factors are added together and divided by three to arrive at a fraction or multiplier. *See* § 7–4–10. This multiplier is applied to the corporation's total apportionable income to arrive at the portion that can be taxed by New Mexico. *See NCR Corp.*, 115 N.M. at 615, 856 P.2d at 985.

#### 3. Detroit Formula of Factor Relief

■ Unlike the federal system, New Mexico does not allow a foreign tax credit for corporations using the separate-entity reporting method and having foreign subsidiary dividend income. The New Mexico tax scheme, however, does allow corporations using the separate-entity reporting method and having foreign subsidiary dividends to apply the "Detroit formula of factor relief." *See* Regulation UDI 19:10[6] (issued March 4, 1994, effective retroactively to January 1, 1988).

The Detroit formula of factor relief operates in the following manner. Where dividends from a foreign subsidiary are included in the apportionable tax base of a taxpayer's

---

5. Regulations issued under the Corporate Income and Franchise Tax Act, NMSA 1978, Sections 7–2A–1 through 7–2A–14 (Repl. Pamp.1993), are prefixed by the letters "CIT."

6. Regulations issued under the UDITPA Sections 7–4–1 through 7–4–21, are prefixed by the letters "UDI."

domestic parent, the UDITPA three-factor apportionment formula is modified by including in the denominators of the parent corporation's property, payroll, and sales factors, a percentage of the property, payroll, and sales of the dividend-generating foreign subsidiary. *See* Regulation UDI 19:10. The percentage of the foreign subsidiaries' property, payroll, and sales included is the ratio that the net dividends received from such subsidiary bears to the subsidiary's net profits, but not to exceed one-hundred percent. *Id.* The overall effect of applying the Detroit formula is to reduce the apportionment factor applied to New Mexico base income.

### D. Conoco's Refund Claims

The taxpayer based its refund claims and its reduced tax payments on the United States Supreme Court's decision in *Kraft,* which is central to this dispute. That case involved a similar reliance on federal standards for determining taxable income and the use of a similar reporting system, separate-entity reporting. There, the Court held that the Iowa income tax scheme, which treated dividends received from foreign subsidiaries less favorably than those received from domestic subsidiaries, facially discriminated against foreign commerce in violation of the foreign commerce clause. *Kraft,* 505 U.S. at 82–83, 112 S.Ct. at 2372.

The taxpayer contends that it is entitled to refunds for the tax years 1988, 1989, 1990, and 1991, on the basis that *Kraft* requires this Court to declare that New Mexico's statutory scheme for taxation of dividend income facially discriminates against foreign commerce in violation of the Commerce Clause of the United States Constitution. *See* U.S. Const. art. I, § 8, cl. 3. The taxpayer thus urges this Court to refund all illegally collected taxes and declare the Department to be without the power to make assessments.

The Department agrees that the separate-entity method of calculating the tax base, if viewed in isolation from the rest of the New Mexico tax scheme, represents discriminatory treatment of foreign subsidiary dividends. The Department argues, however, that United States Supreme Court case law requires this Court to view the interplay of the entire New Mexico tax scheme in assessing a facial discrimination attack. According to the Department, when viewed as a whole, the New Mexico tax scheme, unlike the Iowa Business Tax on Corporations Act in *Kraft,* offers other filing options and offers the Detroit formula of factor relief. As a result, the Department contends that the New Mexico statute is constitutional. We agree with the Department.

The Commerce Clause of the United States Constitution states that "Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among the several States and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause restricts the "power of a state to regulate or tax interstate and foreign commerce even in the absence of the enactment of specific congressional legislation." *NCR Corp.,* 115 N.M. at 618, 856 P.2d at 988. For unitary corporations, like the taxpayer, having income derived both within and outside a state, New Mexico, like the majority of states, employs the UDITPA three-factor apportionment formula that averages the percentages of in-state property, payroll, and sales factors. *See* NMSA 1978, § 7–2A–8(A)(1) (Repl.Pamp.1993); §§ 7–4–10 through 7–4–18. The United States Supreme Court has specifically approved this type of apportionment formula. *See, e.g., Container Corp.,* 463 U.S. at 170, 103 S.Ct. at 2942–43. Indeed, the three-factor formula "has become ... something of a benchmark against which other apportionment formulas are judged." *Id.* (citations omitted).

In analyzing Commerce Clause challenges to tax statutes, a four-part test applies when purely interstate commerce is involved. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977). A state tax survives a Commerce Clause challenge when the tax: (1) is applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. *Id.* Where a tax authority seeks to tax foreign commerce, the tax must satisfy the four-part test set out in *Brady,* plus two additional considerations:

[A] court must also inquire, first, whether the tax, notwithstanding apportionment, creates a substantial risk of international multiple taxation, and, second, whether the tax prevents the Federal Government from "speaking with one voice when regulating commercial relations with foreign governments." If a state tax contravenes either of these precepts, it is unconstitutional under the Commerce Clause.

*Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 451, 99 S.Ct. 1813, 1823, 60 L.Ed.2d 336 (1979). As long as the intrastate and extra-state activities form part of a single, unitary business, the fact that the tax is apportioned in part upon the taxpayer's foreign income sources does not constitute a bar to state taxation. *NCR Corp.,* 115 N.M. at 617, 856 P.2d at 987 (citing *Mobil Oil,* 445 U.S. at 439–40, 100 S.Ct. at 1232–33).

As the Court recognized in *Mobil Oil,* "the linchpin of apportionability in the field of state income taxation is the unitary-business principle." *Mobil Oil,* 445 U.S. at 439, 100 S.Ct. at 1232–33. As long as dividends from subsidiaries and affiliates of a parent corporation doing business in New Mexico reflect profits derived from a functionally integrated enterprise, those dividends, including foreign subsidiary dividend income, are income to the parent earned in a unitary business, and New Mexico has the right to impose a corporate income tax on an apportioned share of that unitary income. *NCR Corp.,* 115 N.M. at 619, 856 P.2d at 989.

By following the federal scheme to arrive at net income, both Iowa and New Mexico allow a deduction for dividends received from domestic subsidiaries, but not for those received from foreign subsidiaries. The crux of the problem for purposes of comparing disparate treatment of domestic and foreign dividend income of the parent corporation doing business in Iowa or New Mexico is to focus on how dividends received from both domestic and foreign subsidiaries not doing in-state business are treated. *See, e.g., Kraft,* 505 U.S. at 74 n. 10, 80 n. 23, 112 S.Ct. at 2368 n. 10, 2371 n. 23. In that situation, neither New Mexico under separate entity filing nor Iowa would tax the corporate income of either subsidiary. Both, however, would allow a deduction to the parent corporation for dividends received from its domestic subsidiary corporations, but not for dividends received from its foreign subsidiary corporations. Neither state allows a credit or deduction similar to the federal credit or deduction election for foreign taxes paid to foreign countries on the earnings of the foreign subsidiary. New Mexico, however, unlike Iowa, allows corporate taxpayers to apply the Detroit formula of factor relief as a modification to the UDITPA three-factor formula for those taxpayers using the separate-entity reporting method and having foreign subsidiary dividend income.

*Kraft* does not mandate the refund of taxes on the basis sought by the taxpayer because there is a significant difference between the taxing systems of Iowa and of New Mexico. New Mexico has modified its apportionment formula in response to *Kraft* to ensure that the foreign commerce of taxpayers received equal tax treatment with domestic commerce. In March 1994, the Department adopted Regulation UDI 19:10, applicable retroactively to tax years beginning in 1988. This regulation allows taxpayers to adjust the standard apportionment formula through the inclusion of a portion of the factors of the taxpayer's foreign subsidiaries, thereby reducing the percentage of the apportionable base subject to tax in New Mexico. With this modification, a taxpayer's foreign commerce is subject to comparable formulary apportionment applicable to the taxpayer's domestic commerce. *Kraft* requires only that states treat foreign and domestic commerce equally; it does not require that states go beyond that equality, to create a potential of a windfall for taxpayers.

In this case, we believe the taxpayer is entitled to a refund only if the New Mexico tax scheme as a whole is unconstitutional and only if the sole appropriate way to remedy the discriminatory treatment of foreign subsidiary dividend income is by allowing the taxpayer to totally exclude all foreign subsidiary dividend income from the tax base in arriving at the "net income" to be taxed by apportionment in New Mexico. Because the taxpayer did not satisfy its initial burden of proving that the New Mexico tax scheme

facially discriminates against foreign commerce, we decline to reach the taxpayer's remedy analysis. *See NCR Corp.*, 115 N.M. at 620, 856 P.2d at 990.

The taxpayer advocates that we focus exclusively on the "unconstitutional tax base" under the Corporate Income and Franchise Tax Act, Sections 7–2A–1 through 7–2A–14. It urges us to declare New Mexico's treatment of foreign subsidiary dividend income unconstitutional and to hold that the only way to remedy the discriminatory tax treatment of domestic and foreign subsidiary dividend income for separate-entity filers is to "equalize" their treatment in the calculation of the tax base by either excluding both and refunding taxes or including both and assessing back taxes. Without legislation mandating a tax on domestic dividend income, the taxpayer continues, the only practical remedy is to refund taxes to taxpayers filing separate-entity returns based on an exclusion of foreign subsidiary dividend income as well as domestic subsidiary dividend income from their tax base calculations.

We conclude that the taxpayer's suggested approach, in spite of having the benefit of simplicity, does not comport with the reality of the New Mexico tax scheme and applicable law. Even a cursory look at the relevant statutes demonstrates that none of them can either be read or applied without the others. *See* Tax Administration Act, NMSA 1978, §§ 7–1–1 through 7–1–82 (Repl.Pamp.1993); §§ 7–2A–1 through 7–2A–14; §§ 7–4–1 through 7–4–21. For example, the Tax Administration Act, which provides certain procedures related to the *fair administration* of taxes (procedures for notice, assessments, refunds, hearings, and of protests) expressly states that the Tax Administration Act applies to and governs the "Corporate Income and Franchise Tax Act [Sections 7–2A–1 through 7–2A–14]," and the "Uniform Division of. Income for Tax Purposes Act [Sections 7–4–1 through 7–4–21]." Sections 7–1–2(A)(17), (18). Section 7–2A–2(R), defines "unitary corporations," and Section 7–2A–8(A)(1) provides that any taxpayer having income that is taxable both within and without New Mexico shall allocate and apportion their income as provided in Sections 7–4–1 through 7–4–21.

Additionally, the United States Supreme Court has held that it is proper to look at the entire tax scheme in evaluating a claim of discrimination. *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 69, 83 S.Ct. 1201, 1203–04, 10 L.Ed.2d 202 (1963); *see also West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 200–01, 114 S.Ct. 2205, 2215, 129 L.Ed.2d 157 (1994) (determination of discrimination under the Commerce Clause requires an analysis of the "purposes and effects" of the state's taxing system as a whole). The proper focus, therefore, *is on* the New Mexico tax scheme as a whole. When viewed as a whole, the New Mexico tax scheme, unlike the Iowa statute at issue in *Kraft*, provides taxpayers with other filing options and allows those taxpayers electing the separate-entity filing method and having foreign subsidiary dividend income to apply the Detroit formula of factor relief to its tax base calculated on the separate-entity method. This allowance was promulgated by the Department under Section 7–4–19.

The taxpayer, citing *State ex rel. McCulloch v. Ashby*, 73 N.M. 267, 387 P.2d 588 (1963), contends that a facially discriminatory statute cannot be remedied by an administrative regulation. In *Ashby*, however, the regulation that was alleged to save the statute was not authorized by the statute. *Id.* at 271, 387 P.2d at 590. In this case, on the other hand, the regulation permitting use of the Detroit formula was enacted pursuant to the express statutory authority of Section 7–4–19.

The taxpayer next argues that Section 7–4–19 does not permit the Department to promulgate a regulation addressing differential treatment of foreign and domestic source-dividend income. Section 7–4–19 permits the Department to require taxpayers to use allocation and apportionment methods other than contained in UDITPA if "the allocation and apportionment provisions of . . . [UDITPA] do not fairly represent the extent of the taxpayer's business activities in this state." Because the taxpayer vigorously argues that this is not a "fair allocation" or "fair apportionment" case, but rather a "fa-

cially discriminatory tax base" case, the taxpayer contends that regulations under Section 7–4–19 are unavailing. We disagree.

■ The purpose of fair apportionment is to insure that a given taxing jurisdiction does not tax extrajurisdictional income. *See Exxon,* 447 U.S. at 223–30, 100 S.Ct. at 2120–24. As we noted previously, the use of certain accounting methods and corporate formalities can result in manipulation and understatement of income to the taxing jurisdiction. The use of UDITPA thus serves two purposes at once. At the same time that it insures that only income with a nexus to the taxing jurisdiction is taxed, it also insures that all income that can be legitimately taxed is taxed. Although apportionment does not always accomplish its purposes with exact and empirical precision, *see Mobil Oil,* 445 U.S. at 452, 100 S.Ct. at 1239 (Stevens, J., dissenting), that fact does not detract from its dual purposes. Thus, if a regulation based on these purposes serves to eliminate what would otherwise be a discrimination, we should not ignore it.

We turn now to the consideration of (1) the applicability of the other filing options to this case, and (2) whether the New Mexico tax scheme (including the availability of the Detroit formula of factor relief for those taxpayers using the separate-entity reporting method and having foreign subsidiary dividend income) withstands the taxpayer's facial discrimination attack.

### 1. Alternative Methods of Calculating the Tax Base

■ Initially, we address the Department's argument that the taxpayer should be estopped from challenging the discriminatory treatment of foreign subsidiary dividend income when New Mexico allows corporations to elect its method of calculating its tax base and offers alternative methods of filing returns. The Department contends that the taxpayer benefitted from significantly lower taxes as a result of electing the separate-entity method of calculating its tax base, and, thus, should not now cry "foul" in order to get even lower taxes for the applicable tax years by excluding all foreign subsidiary dividend income from its tax base calculations.

We consider the Department's suggested analysis problematic and decline to endorse it.

As the taxpayer points out, and the Department admits in its answer brief, the Department did not cross-appeal this issue. We conclude, however, that the Department may raise this issue for review, without taking a cross-appeal, as another ground for affirming the hearing officer's decision in the event that this Court were to consider reversal in whole or in part. *See* SCRA 12–201(C) (review without cross-appeal); *Frederick v. Younger Van Lines,* 74 N.M. 320, 328, 393 P.2d 438, 443 (1964); *see also Jaramillo v. Jaramillo,* 113 N.M. 57, 62, 823 P.2d 299, 304 (1992) (lower court's decision will be affirmed on review if that decision was correct, even though court may have used an incorrect rationale in arriving at its result).

Nevertheless, on the merits, we agree with the taxpayer that the hearing officer was correct in its determination against the Department, although for different reasons. The hearing officer relied on provisions of Regulation CIT 9:2, which, although permitting a taxpayer to choose any one of four methods of reporting, expressly prohibited any taxpayer from making a retroactive election of a different method once one of the four methods was chosen. The hearing officer also relied on Section 7–1–60, which estops the Department from taking action adverse to a taxpayer who acts in reliance of a regulation.

The Department responds that these provisions of the law are inapposite because the Department was not seeking to make the taxpayer retroactively file under a different reporting method that would require it to pay more taxes. The Department's contention is that, because there was an alternative and presumably constitutional method of filing available to the taxpayer, the taxpayer should not be heard to complain about a method it chose itself. We reject the Department's contention because our Court, as well as other courts, have frequently considered issues arising from a person's choice of one form of government-imposed condition or situation even though other more onerous

conditions were available. *See, e.g., Campbell v. Wood,* 18 F.3d 662, 680 (9th Cir.) (en banc) (court recognizes that it reviews constitutionality of probation conditions although probationer could have chosen incarceration, in which case dispute about probation conditions would not have arisen), *cert. denied,* 511 U.S. 1119, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994); *State v. Charlton,* 115 N.M. 35, 37–38, 846 P.2d 341, 343–44 (Ct.App.1992) (court reviews banishment as apparent condition of probation or suspended sentence), *cert. denied,* 114 N.M. 577, 844 P.2d 827 (1993). Consequently, we affirm the hearing officer's determination that the taxpayer was not estopped from challenging the separate-entity reporting method on the ground that alternative methods of filing exist.

### 2. The Detroit Formula of Factor Relief

The taxpayer argues that the facially discriminatory features of Sections 7–2A–1 through 7–2A–14, cannot be corrected by attempting to more fairly apportion a "constitutionally defective tax base" by application of the Detroit formula of factor relief to it. We disagree.

As we noted above, the taxpayer incorrectly views the separate-entity method of calculating the tax base in a vacuum, without considering the entire New Mexico tax scheme. This is contrary to the manner under which the New Mexico tax scheme operates and contrary to existing United States Supreme Court law. The taxpayer's analysis also ignores the purpose of factor representation, which is to fairly apportion the total income of a unitary, multistate corporation to each state to accurately determine the income generated in a state that is subject to that state's tax. *See Exxon,* 447 U.S. at 223–30, 100 S.Ct. at 2120–23.

■ The Due Process Clause and the Commerce Clause do not prohibit states from including foreign-source dividends in the apportionable tax base. *See Mobil Oil; NCR Corp.* Under the Detroit formula of factor relief, where dividends from a foreign subsidiary are included in the apportionable tax base of a domestic parent corporation, a certain percentage of the foreign subsidiaries' property, payroll, and sales factors are also included in the denominator of the parent corporation. The percentage of foreign factors included in the parent's denominators is equal to the percentage of the foreign subsidiaries' earnings paid to the parent as dividends. The Department provided expert testimony that the inclusion of the factors that generated the foreign subsidiary dividends resulted in New Mexico taxing only income earned within its borders and, in doing so, theoretically excluded foreign dividends from the tax base. We believe that the Commerce Clause and Due Process Clause are satisfied by application of the Detroit formula when foreign subsidiary dividend income is included in the tax base. *See Tambrands, Inc. v. Maine Tax Assessor,* 595 A.2d 1039 (Me.1991).

■ Although the taxpayer provided evidence that application of the Detroit formula to its returns for tax years 1988, 1989, 1990 and 1991, resulted in higher taxes than the exclusion of dividends from the tax base, the taxpayer did not offer evidence to counter the Department's evidence that equal, higher, or lower New Mexico taxes resulted from application of the Detroit formula based on the relative *efficiencies* of the taxpayer's domestic and foreign operations, and not upon the foreign or domestic *source* of the taxpayer's income. The taxpayer contends that the hearing officer erroneously relied on the Department's experts because those experts based their opinions on "unsupported assumptions" and "mere possibilities" with the result that their opinions were incompetent and insufficient to support any findings. We note that neither the written record of the tape log nor the taxpayer's appellate briefs indicates that the taxpayer had any objection to the testimony of the Department's experts on competency grounds. It is the general rule that the admission of expert testimony and the weight to be given such testimony is for the trial court to determine. *See Sanchez v. Molycorp, Inc.,* 103 N.M. 148, 153, 703 P.2d 925, 930 (Ct.App.1985). In this case, the hearing officer found the Department's experts' opinions to be adequately explained and more persuasive on the issues than the taxpayer's experts' opinions. Based on the theoretical nature of the Department's ex-

perts' testimony, and considering the sense made in the concrete examples used by the hearing officer in his decision, we hold that his determination to accept the Department's experts' opinions was not erroneous.

■ Thus, the taxpayer failed to prove by clear and cogent evidence that the income attributed to New Mexico was in fact out of all appropriate proportions to the business transacted in the state or has led to a grossly distorted result. *See Container Corp.*, 463 U.S. at 170, 103 S.Ct. at 2942–43. Thus, too the taxpayer has failed to show that New Mexico's system of corporate income taxation, which applies the Detroit formula of factor relief to separate-entity reporting contemporaneously with the UDITPA formula, impermissibly discriminates against foreign commerce under all sets of circumstances. The United State Supreme Court's decision in *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388, 398–99, 104 S.Ct. 1856, 1862–63, 80 L.Ed.2d 388 (1984), on which the taxpayer relies for the proposition that "fair apportionment" and "nondiscrimination" are not synonymous, does not persuade us otherwise. We agree that these terms are not synonymous. Discrimination, however, was clearly shown to exist in *Westinghouse;* the same cannot be said in this case. Additionally, nothing in *Westinghouse,* or in any other case cited by the taxpayer or discovered by our own research, indicates that fair apportionment can never operate to cure discrimination. In this case, we believe, the evidence indicated that it did.

■ We therefore hold that the taxpayer failed to meet its burden required to challenge on facial discrimination grounds the New Mexico tax scheme in a situation where the burden of proof is on the taxpayer. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987) (an attack of facial discrimination requires the claimant to show that no set of circumstances exists under which the act would be valid); *NCR Corp.*, 115 N.M. at 620, 856 P.2d at 990 (the burden is on the taxpaying corporation to show by "clear and cogent evidence" that the income attributed to the state is in fact disproportionate to the business transacted in that state); *see also Tip-*

*perary Corp. v. New Mexico Bureau of Revenue*, 93 N.M. 22, 24, 595 P.2d 1212, 1214 (Ct.App.) (taxpayer has duty to present evidence overcoming correctness of assessment), *cert. denied,* 92 N.M. 675, 593 P.2d 1078 (1979). To the extent that our analysis differs from that of the hearing officer, this Court will affirm if the ruling appealed from is right for any reason. *See State v. Lovato*, 112 N.M. 517, 521, 817 P.2d 251, 255 (Ct. App.), *cert. denied,* 112 N.M. 388, 815 P.2d 1178 (1991); *see also Jaramillo*, 113 N.M. at 62, 823 P.2d at 304. We thus affirm the hearing officer's denial of the taxpayer's refund claims for the tax years 1988, 1989, 1990, and 1991.

E. The Assessment

■ The hearing officer partially upheld and partially denied the Department's assessment of taxes, penalties, and interest for tax year 1991. In Assessment No. 1,638,288, the Department did not calculate the taxpayer's tax liability using the Detroit formula. As a result, the hearing officer ordered the Department to abate that portion of the assessed tax and interest in excess of the amount of tax and interest owing if the Detroit formula were applied. The hearing officer then struck down the penalty on Assessment No. 1,638,288 because the taxpayer was not negligent in calculating its tax base for the tax year 1991, by excluding foreign dividends based on the judgment of its tax manager and accountant. We conclude that the hearing officer's findings on this issue were supported by substantial evidence in the record and that his conclusions were in accordance with applicable law. We therefore affirm on this issue.

IV. CONCLUSION

We hold that the hearing officer properly denied the taxpayer's claims for refunds. We also hold that the hearing officer properly reduced the Department's assessment against the taxpayer. We thus affirm.

IT IS SO ORDERED.

PICKARD, J., concurs.

DONNELLY, J., dissents and files opinion.

DONNELLY, Judge (dissenting).

I respectfully dissent. I would reverse the administrative hearing officer's decision that upheld the State Taxation and Revenue Department's denial of Taxpayer's refund claims for the 1988, 1989, and 1990 tax years and affirmed the imposition of additional taxes and penalties against Taxpayer for the 1991 tax year.

The Department concedes that New Mexico's corporate income tax statute, as it applies to the separate entity method of reporting, is similar to Iowa's corporate income tax scheme that was declared invalid by the United States Supreme Court in *Kraft General Foods, Inc. v. Iowa Department of Revenue & Finance,* 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992). *Kraft* held that Iowa's tax reporting and payment provisions, as applied to corporations engaged in domestic and foreign commerce, facially discriminated against foreign commerce because they treated dividends received from foreign subsidiaries less favorably than those received from domestic subsidiaries and such disparate tax treatment is inconsistent with the Foreign Commerce Clause of the United States Constitution. *Id.*

The separate entity method of reporting under our Corporate Income and Franchise Tax Act also results in the same disparate tax treatment of foreign subsidiary dividends condemned in *Kraft.* Unlike the federal corporate income tax law, New Mexico's corporate taxing scheme, like Iowa's, does not authorize a credit or deduction for foreign taxes paid to foreign countries on the earnings of a corporation's foreign subsidiaries. Similarly, New Mexico and Iowa both allow a deduction for dividends received from domestic subsidiaries but not those derived from a taxpayer's foreign subsidiaries. As a result, both schemes include foreign, but not domestic, subsidiary dividend income in the tax bases used to determine the amount of a corporation's state income taxation.

Although acknowledging the similarity of New Mexico's corporate income tax to that of Iowa's, the Department points out that following the decision in *Kraft,* New Mexico modified its tax scheme by adopting Administrative Regulation UDI 19:10 (issued March 4, 1994, effective retroactively to tax years beginning on or after January 1, 1988),[1] allowing unitary corporations like Taxpayer, who use the separate entity method of reporting for New Mexico corporate income taxes, to adjust the Uniform Division of Income for Tax Purposes Act (UDITPA) three-factor apportionment formula by applying a modified version of the "Detroit formula of factor relief." *See* NMSA 1978, §§ 7–4–1 to –21 (Repl.Pamp.1993). Consequently, the Department asserts that New Mexico's tax scheme, when viewed as a whole, removes its corporate income tax scheme from the constitutional problems identified in *Kraft.*

In my opinion, the Department's effort to divorce itself from the holding in *Kraft* fails. My disagreement with the analysis and decision of the majority turns on its application of the four-part test articulated in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), and the two additional inquiries imposed by *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 451, 99 S.Ct. 1813, 1823, 60 L.Ed.2d 336 (1979), when the tax involves foreign commerce.[2] In order to surmount a challenge to the constitutionality of a state tax under the Commerce Clause of the United States Constitution, the Department must show that the tax (1) has been applied based upon an activity of taxpayer

1. In pertinent part, Regulation UDI 19:10(A) provides:

    Any corporation that receives foreign-source dividends during the taxpayer's taxable year and that reports its corporate income tax liability to the state as a separate corporate entity and not as a member of a corporate group ... may adjust the denominators of its apportionment factors for foreign source dividends received. The taxpayer may increase the denominator of each of its apportionment factors by an amount equal to the respective denominator of the payor stated in United States dollars times a ratio of foreign-source dividends paid to the taxpayer divided by the book income of the payor.

2. Taxpayer owns either all of the stock or varying percentages of stock in over 100 corporate subsidiaries that are incorporated and operate in foreign countries. Taxpayer receives dividends from these subsidiaries paid from the subsidiary corporations' after-tax earnings.

having a substantial nexus within the taxing state, (2) has been fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. *Complete Auto Transit*, 430 U.S. at 279, 97 S.Ct. at 1079. Since the tax here involves foreign commerce, *Japan Line, Ltd.* also requires a showing that, notwithstanding the fact that the tax satisfies the other criteria, it does not create a substantial risk of international multiple taxation, and that the state tax will not prevent "the Federal Government from 'speaking with one voice when regulating commercial relations with foreign governments.'" *Japan Line, Ltd.*, 441 U.S. at 451, 99 S.Ct. at 1823.

The Department contends that the use of the Detroit formula modifies the UDITPA formula so as to more accurately apportion the amount of this state's income that a parent corporation is found to have incurred because the Detroit factor adjusts the UDITPA formula by adding to the denominator of the UDITPA formula the amount of property, payroll, and sales of any dividend income-generating foreign corporate subsidiary. However, modification of an apportionment formula to reduce the tax on Taxpayer's foreign subsidiaries does not eliminate the disparate treatment of Taxpayer proscribed by *Kraft*.

The regulation relied upon by the Department which authorizes the use of the Detroit formula of factor relief does not remedy the main challenge of Taxpayer in the instant case. This Court, in *NCR Corp. v. Taxation & Revenue Department*, 115 N.M. 612, 618, 856 P.2d 982, 988 (Ct.App.), *cert. denied*, 115 N.M. 677, 857 P.2d 788 (1993), *and cert. denied*, 512 U.S. 1245, 114 S.Ct. 2763, 129 L.Ed.2d 877 (1994), upheld the right of the state to impose a fairly apportioned corporate income tax upon NCR (a unitary corporation) having income derived both within and outside the state, including its foreign subsidiaries. This Court in *NCR*, however, did not address the issue presented here, namely, whether the state's unequal treat-ment of foreign subsidiary dividend as compared to domestic subsidiary dividend income violates the Foreign Commerce Clause of the United States Constitution.

Because the tax involved here permits corporations with domestic subsidiaries to exclude from the tax base the dividend income of those subsidiaries, but requires Taxpayer, who receives dividend income from foreign subsidiaries, to include such income in its tax base, without allowing a credit or a deduction, the tax does not accord equal treatment and thus is facially discriminatory. The Department has not shown that Taxpayer here is accorded equal treatment with corporations engaged in interstate commerce and which have no foreign subsidiary dividend income.[3] Nor has the Department shown any compelling state interest which justifies disparate tax treatment of corporate foreign and domestic dividend income.

Regulation UDI 19:10 does not cure the facial discrimination recognized in *Kraft*, because it fails to eliminate the unequal treatment of foreign and domestic subsidiary dividend income from Taxpayer's tax base. When foreign subsidiary dividend income is included in a corporation's tax base, the Detroit formula serves to increase the denominator of the UDITPA apportionment formula by the amount of the foreign subsidiary property, payroll, and sales without also increasing the numerator. This results in a diminution of the apportionment formula and presumably lessens the taxpayer's tax liability. However, the Detroit formula does not remove the foreign subsidiary dividend income from Taxpayer's tax base. Thus, Taxpayer's total foreign subsidiary dividend income remains subject to taxation under the Department's regulation. Consequently, Regulation UDI 19:10, which employs the Detroit formula, falls well short of the "'strict rule of equality'" required in interstate commerce clause cases. *See Associated Indus. of Mo. v. Lohman*, 511 U.S. 641, 649, 114 S.Ct. 1815, 1821, 128 L.Ed.2d 639 (1994) (quoting *Halliburton Oil Well Ce-*

---

**3.** In this appeal, the administrative hearing officer found that Taxpayer's foreign subsidiaries operate in foreign countries and the flow of value between Taxpayer and its foreign subsidiaries, including the dividends and deemed dividends received from its foreign subsidiaries, constitute foreign commerce.

*menting Co. v. Reily,* 373 U.S. 64, 73, 83 S.Ct. 1201, 1205–06, 10 L.Ed.2d 202 (1963)); *see also Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 101, 113 S.Ct. 2510, 2520, 125 L.Ed.2d 74 (1993) (remedies employed by state must totally eliminate discrimination).

Furthermore, although the Department argues that application of the Detroit formula of factor relief provides a fair method of apportionment, this argument addresses only a portion of the six-part test to be applied. Fairness in applying the method of apportionment relates to the second factor in the *Complete Auto Transit* test—it does not satisfy the other components of the test. *See Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995) (refusing to address a fair apportionment argument in determining whether a state-imposed tax violates interstate Commerce Clause); *Westinghouse Elec. Corp. v. Tully,* 466 U.S. 388, 399, 104 S.Ct. 1856, 1863, 80 L.Ed.2d 388 (1984) (" 'Fairly apportioned' and 'nondiscriminatory' are *not* synonymous terms." (emphasis added)).

Since, as pointed out by Taxpayer here, New Mexico continues to require that Taxpayer's foreign dividend income derived from its foreign subsidiaries be included in its tax base and this requirement does not apply to corporations with domestic subsidiaries, a disparity exists, treating corporations who receive dividend income from foreign subsidiaries less favorably. It is this difference, I believe, that fails to remove Taxpayer's Commerce Clause challenge in the present case from the constitutional impediments recognized in *Kraft*. Specifically, the tax in question here, as applied to Taxpayer, does not satisfy the third component of the *Complete Auto Transit* test, or the requirement in *Japan Line, Inc.,* that such tax will not create a substantial risk of multiple, international taxation.

The Department also contends, and the administrative hearing officer below agreed, that under *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987), Taxpayer failed in its burden to establish that under no set of circumstances would application of this state's taxing scheme be valid. I believe the Department and the administrative hearing officer erroneously transferred the burden to Taxpayer to show that the Detroit formula of factor relief discriminates against foreign commerce. Taxpayer offered evidence that while application of the Detroit formula reduces, in part, the tax on its foreign subsidiary dividends, nevertheless, this formula does not eliminate this state's unequal tax treatment of such income.[4] This evidence was sufficient to rebut the presumption of the correctness of the tax, hence, the burden shifted to the Department to establish that this state's corporate income tax scheme satisfies each factor of the four-part test of *Complete Auto Transit* and the two additional factors set out in *Japan Line, Ltd.*

Simply stated, Taxpayer's challenge here is that the tax base used by New Mexico to compute corporate income taxes under the separate entity accounting method impermissibly violates the Foreign Commerce Clause of the United States Constitution by requiring foreign subsidiary dividend income to be included in Taxpayer's taxable income, while excluding domestic subsidiary dividend income. This challenge is supported by persuasive authority. *See Kraft,* 505 U.S. at 78–82, 112 S.Ct. at 2370–71 (inclusion of dividend income of foreign subsidiaries of domestic corporation that is not required of domestic subsidiaries, facially discriminates between domestic and foreign subsidiaries); *see also Woosley v. California,* 3 Cal.4th 758, 13 Cal. Rptr.2d 30, 35–36, 838 P.2d 758, 771 (1992) (en banc) (tax imposed at uniform rate on intrastate and interstate commerce may still be facially discriminatory if state law defines

---

**4.** As recognized in *Kraft,* legitimate business reasons often lead a corporation to conduct foreign business through incorporation of foreign subsidiaries. *Kraft,* 505 U.S. at 76 n. 15, 112 S.Ct. at 2369 n. 15. Yet, as acknowledged by the Department, whether a taxpayer that excludes foreign dividends from the tax base would pay less tax or

more tax than a taxpayer using Regulation UDI 19:10 depends on the economic efficiency of the foreign operations. Thus, if the economic efficiency of Taxpayer's foreign operations exceeds that of its domestic operations, Taxpayer's New Mexico income tax is increased.

the tax base differently for interstate as opposed to intrastate transactions), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).

In *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 40–41, 110 S.Ct. 2238, 2252–53, 110 L.Ed.2d 17 (1990), the Court suggested that, in order to avoid discriminatory tax treatments, a state may either exclude dividend income derived from a corporation's foreign subsidiaries from taxation or tax such income in the same manner as the Department taxes corporate taxpayers deriving income from domestic subsidiaries within the United States. The Detroit formula of factor relief relied upon by the Department does not follow either approach.

In sum, because the regulation promulgated by the Department includes in the tax base a portion of Taxpayer's income not imposed upon corporations having income from domestic subsidiaries and imposes a tax upon a portion of its foreign subsidiary income, application of the Detroit formula does not meet the requirements of the Commerce Clause and the tax as applied to Taxpayer for the years in question facially discriminates against foreign commerce. I would grant the refunds sought by Taxpayer and invalidate the penalty assessments levied by the Department.