1997–NMCA–004

931 P.2d 754

**INTEL CORPORATION, Plaintiff–Appellant/Cross–Appellee,**

v.

**TAXATION AND REVENUE DEPARTMENT OF the STATE OF NEW MEXICO, Defendant–Appellee/Cross–Appellant.**

No. 15823.

Court of Appeals of New Mexico.

June 30, 1995.

Certiorari Granted Aug. 8, 1995.

Curtis W. Schwartz, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Santa Fe, Paul H. Frankel, Walter Hellerstein, Hollis L. Hyans, Judith E. Lansky, Irwin M. Slomka, Morrison & Foerster, New York City, for plaintiff-appellant/cross-appellee.

Tom Udall, Attorney General, Bruce J. Fort, Special Assistant Attorney General, Taxation & Revenue Department, Santa Fe, for defendant-appellee/cross-appellant.

### OPINION

HARTZ, Judge.

Intel Corporation appeals the decision of the New Mexico Taxation and Revenue Department hearing officer denying its claim for refund of New Mexico corporate income tax payments for the tax years 1988 through 1991. The Department cross-appeals from the hearing officer's allowance of Intel's claim to a tax credit for payments for employee child care in the tax year 1991. We

affirm the decision of the hearing officer. Only our discussion of the child care credit merits publication.

The Department contends that the hearing officer erred in allowing Intel a tax credit under NMSA 1978, Section 7–2A–14(A) (Repl.Pamp.1993), which states:

A taxpayer that pays for child care services in New Mexico for dependent children of an employee of the taxpayer during the employee's hours of employment may claim a credit against the corporate income tax imposed pursuant to the Corporate Income and Franchise Tax Act in an amount equal to thirty percent of the total expenses for child care services incurred and paid by the taxpayer in the taxable year.

The credit is limited to $30,000 per taxable year. Section 7–2A–14(D). What makes the provision particularly generous is that the same expenditure by the corporation will usually result in a New Mexico income tax deduction as well as the tax credit. Corporate expenses that are deductible for federal income tax purposes—for example, ordinary and necessary business expenses, I.R.C. § 162(a)—are, with a few enumerated exceptions, also deductible for New Mexico income tax purposes. Deductibility under state law is a consequence of the state tax being imposed upon "net income," NMSA 1978, Section 7–2A–3(A) (Repl.Pamp.1993), which is defined in terms of federal taxable income, *see* Section 7–2A–2(C) (Repl.Pamp.1993) (defining "base income" as federal taxable income) and (I) (defining "net income" as "base income" adjusted for certain enumerated exclusions).[1] No provision of New Mexico law specifically prohibits a corporation from claiming a credit under Section 7–2A–14 for expenditures that are also deductible under federal (and hence state) income tax law.

The credits challenged by the Department were based on payments pursuant to Intel's dependent care assistance program (the DCAP Plan). The hearing officer described the plan as follows:

The DCAP Plan has two parts. One part is a resource and referral service to assist employees in finding day care programs for their dependent children. The other part is a salary reduction payroll program by which employees may shelter from income tax a portion of their salary and then use the tax sheltered salary to pay for dependent care expenses.

Enrollment in the DCAP plan is voluntary by Intel employees. Intel employees may enroll in the DCAP Plan on an annual basis. Upon enrollment, an employee must designate, within certain limitations, a specific amount of salary to be paid into the DCAP Plan. The designated amount cannot be changed except in very limited circumstances. Intel pays the designated salary into the plan, rather than to the employee.... After incurring dependent care expenses, the employee submits evidence of those expenses to the DCAP Plan and obtains reimbursement of those expenses from the DCAP Plan in accordance with the terms of the DCAP Plan.

Any funds placed in the DCAP Plan by Intel on behalf of a participating employee which are in excess of the reimbursed expenses received by the employee during the plan year remain the funds of the DCAP Plan.

The chief advantage to an employee from enrolling in the DCAP Plan is that I.R.C. Section 129 excludes payments into the plan from the employee's gross income for federal income tax purposes, and hence for state income tax purposes. *See* NMSA 1978, § 7–2–3 (Repl.Pamp.1993) (personal income tax imposed upon "net income"), NMSA 1978, § 7–2–2(N) (Repl.Pamp.1993) ("net income" defined as "base income" adjusted for certain enumerated exclusions), § 7–2–2(B), ("base income" defined in terms of adjusted gross income for federal income tax purposes).

The Department limits its challenge to credits arising from the salary–reduction component of the plan. The Department allowed the credit claimed by Intel that arose from the referral-service component.

The determinative issue on this appeal is whether the expenses for child care were "incurred and paid" by Intel, within the

---

1. The Department has conceded that the payments at issue were deductible.

meaning of Section 7–2A–14(A). The briefs of the parties focus on the meaning of the word "incurred." One possibility is that "incurred" is used as a term of art that applies only to accrual basis taxpayers. When tax statutes use the phrase "paid or incurred," often the word "paid" is to be applied to cash basis taxpayers and "incurred" is to be applied to accrual basis taxpayers. *See Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 574, 97 S.Ct. 850, 854, 51 L.Ed.2d 48 (1977). We must reject such a technical application of the words "incurred" and "paid," however, because it would lead to an absurd construction of Section 7–2A–14(A). *See State v. Gutierrez*, 115 N.M. 551, 552, 854 P.2d 878, 879 (Ct.App.) (statute may not be interpreted to reach absurd result), *cert. denied*, 115 N.M. 545, 854 P.2d 872 (1993). The section requires that the expense must be "incurred *and* paid." Because a corporation cannot be both an accrual basis taxpayer and a cash basis taxpayer with respect to the same transaction, *see generally* I.R.C. Section 446, adoption of the technical construction of the phrase would mean that no corporation could ever qualify for the tax credit.

We have looked for some special meaning of the phrase "incurred and paid" but without success. Various states have enacted statutes which include the phrase, but apparently no reported decision has construed the language. Thus, in the absence of any reason to do otherwise, we adopt the ordinary meaning of the words. *See Davis v. Commissioner of Revenue*, 83 N.M. 152, 153, 489 P.2d 660, 661 (Ct.App.), *cert. denied*, 83 N.M. 151, 489 P.2d 659 (1971). "Paid" presents no difficulty. As for "incurred," the Department has cited one dictionary as defining the verb "incur" as "[to] bring down upon oneself." *Webster's Third New International Dictionary* 1146 (1971). Another definition is: "[to] become liable or subject to." *Id.* In the present context, we believe the natural definition of "incurred" would be "due because services have been performed." In other words, the addition of "incurred and" to the word "paid" in Section 7–2A–14(A) is simply to prevent the award of credits for prepayment of services to be provided in the future. An expense is "incurred and paid" when it is paid to cover a liability for services already rendered.

The real question before us is not whether expenses for child care were "incurred and paid." It is *who* incurred and paid the expenses. The positions of both parties have considerable force. Intel can properly point out that the money came out of its pocket and it had an obligation to pay the child care expenses. In addition, Intel bore the administrative expenses of the DCAP Plan. On the other hand, the Department can point out that the employee was the true source of the money, because the employee was giving up a portion of his or her salary to enable Intel to make the payment.

We resolve the dispute by considering the context—the entire statutory scheme governing the tax treatment of child care expenditures. Because New Mexico's income tax laws incorporate the pertinent provisions of federal law, we examine both the federal and state provisions. That examination compels us to reject the Department's argument. To adopt the premise that the money involved here was really the employees' and not Intel's would be to contradict the provisions of I.R.C. Section 129. That section states that Intel's payments of child care expenses for an employee are to be excluded from the employee's gross income for federal income tax purposes. In other words, for income tax purposes the money spent for child care is not considered to be the employee's money. Indeed, I.R.C. Section 129(e)(7) provides that an employee cannot claim any federal income tax deduction or credit (including the credit for child care expenditures) for amounts excluded from the employee's income by Section 129.

Our interpretation does not appear to undermine any policy of the New Mexico tax law. In particular, we reject the Department's implicit suggestion that the legislature would not have condoned such a loss in tax revenue. A similar loss would be incurred under the Department's approach of treating the child care expenses as being paid and incurred by the employee. If expenditures for child care under the DCAP Plan should be treated as expenditures by the employees, then the employees would be

entitled to the New Mexico income tax credit for child-care expenses provided by NMSA 1978, Section 7–2–18.1 (Repl.Pamp.1993). Given the $30,000 cap on the corporate child-care credit, *see* Section 7–2A–14(D), and the large number of Intel employees, the loss to the state in tax revenues might well be greater if one were to treat the expenditures as being the employees', as suggested by the Department. We have no way of knowing what the impact on revenue would be if the Department's approach were applied to all Section 129 plans instituted by corporations in the state.

We recognize and appreciate the Department's concern about what appears to be overly generous income tax treatment of Intel's DCAP Plan. Our task, however, is to interpret the statute as written, not to "improve upon" the work of the legislature. Any modifications to the law sought by the Department must come from the other branches of government.

**ATTORNEY FEES**

Under NMSA 1978, Section 7–1–25(D) (Repl.Pamp.1993), a taxpayer is entitled to reasonable attorney's fees if we affirm a decision by the hearing officer that has been appealed by the Department. Pursuant to that provision we order the Department to pay Intel $2000 in attorney's fees.

The decision of the hearing officer is affirmed.

**IT IS SO ORDERED.**

BUSTAMANTE, J., concurs.

DONNELLY, J., concurs in part and dissents in part.

DONNELLY, Judge, concurring in part and dissenting in part.

I concur in the affirmance of the administrative hearing officer's decision to allow Intel's claim to the corporate child care tax credit for payments made during the 1991 tax year.

For the reasons set forth in my dissenting opinion in *Conoco, Inc. v. Taxation & Revenue Department,* 122 N.M. 745, 931 P.2d 739 (Ct.App.1995), I respectfully dissent from that portion of the majority decision which affirms the State Taxation and Revenue Department's denial of Intel's refund claims in the instant case. As stated in the dissent in *Conoco,* in my opinion, the Department's disparate treatment of Conoco's dividend income received from its foreign subsidiaries facially discriminates against foreign commerce and thus is contrary to *Kraft General Foods, Inc. v. Iowa Department of Revenue & Finance,* 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992). I would reverse the administrative hearing officer's decision and grant Intel's refund claims for the tax years 1988 through 1991. Moreover, since this Court's decision was filed in *Conoco,* the Supreme Court of Rhode Island has also had occasion to rule on an analogous claim involving that state's disparate treatment of domestic and corporate dividend income in light of the decision in *Kraft General Foods. See Dart Indus., Inc. v. Clark,* 657 A.2d 1062 (R.I.1995). In *Dart Industries* the court found that Rhode Island failed to comply with *Kraft General Foods* and ordered a refund of taxes paid by the taxpayer. The court in *Dart Industries* held that the Rhode Island corporate income tax statute which required the inclusion of foreign, but not domestic, dividend income impermissibly discriminated and violated the Foreign Commerce Clause of the United States Constitution and the holding in *Kraft General Foods.*