**DART INDUSTRIES, INC.**

v.

**R. Gary CLARK, Tax Administrator.**

Nos. 94–102–M.P., 91–439–
M.P. and 91–356–M.P.

Supreme Court of Rhode Island.

May 10, 1995.

Bernard J. Lemos, Legal Officer, Taxation, Marcia McGair Ippolito, Chief Legal Officer, Taxation, Providence, for plaintiff.

E. Hans Lundsten and Paul W. Goodale, Adler Pollock & Sheehan Inc., Providence, for defendant.

OPINION

MURRAY, Judge.

This case comes before us on the petition of R. Gary Clark in his capacity as Rhode Island Tax Administrator (administrator) for certiorari. The administrator contends that the District Court erred in applying the decision of *Kraft General Foods, Inc. v. Iowa Department of Revenue and Finance*, 505 U.S. ——, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992) (*Kraft*), retroactively to invalidate G.L.1956 (1980 Reenactment) § 44–11–11. He further asserts that the District Court erred in invalidating Rhode Island's predeprivation procedures for taxpayers under the due-process clause of the Fourteenth Amendment to the United States Constitution and misinterpreted G.L.1956 (1980 Reenactment) § 44–1–11 to require a tax refund for Dart Industries, Inc. To the extent noted below, we affirm the decision of the District Court.

The essential facts are not in dispute as the parties have previously stipulated to and submitted an agreed statement of facts to the District Court. Dart Industries, Inc. (Dart), is a Delaware corporation with its principal place of business in Northbrook, Illinois. Dart is a manufacturer of various plastic products and maintained a local place of business in Woonsocket, Rhode Island, during the tax years in question. For calendar tax year 1981, Dart filed a Rhode Island Business Corporation Tax return with the Rhode Island Division of Taxation (tax division) on a net-worth basis and filed returns for calendar tax years 1982 and 1983 on a net-income basis. In calculating its net income for each of the tax years in question, Dart excluded, by deductions or otherwise, dividends it received from foreign subsidiary corporations (foreign dividend income). In November of 1984, Dart was the subject of a field audit conducted under the Rhode Island Business Corporation Tax by an auditor of the tax division's multistate audit section. The examination encompassed calendar tax years 1981, 1982 and 1983.

As part of his audit adjustments, the tax division's field auditor included foreign dividend income in computing Dart's net income subject to Rhode Island apportionment and taxation for each calendar tax year in question. As a result of these adjustments, Dart's tax liability was recomputed and resulted in an additional tax assessment of $93,849 for tax year 1981, $253,872 for tax year 1982, and $250,048 for tax year 1983. Consequently, the tax division issued deficiency notices for business corporation taxes assessed to Dart for the years in question reflecting this increase. On October 2, 1985, Dart filed a timely written request for administrative review.

Pursuant to Division of Taxation regulation No. AHP 94–01 B.5, Dart was afforded an informal preliminary conference to contest the field auditor's adjustments. As a result of the conference Dart received a partial reduction of the additional tax assessments.[1] Not satisfied with these reductions, Dart availed itself of the statutory right to contest the assessments in a formal adversarial hearing in accordance with the provisions of Rhode Island's Administrative Procedures Act. G.L.1956 (1984 Reenactment) chapter 35 of title 42; *see* § 44–11–6. To understand fully Dart's primary argument to the presiding adjudicative officer at the administrative hearing and ultimately to the District Court, a review of federal and Rhode Island tax treatment of foreign and domestic dividends is necessary.

Under the Internal Revenue Code a corporation receiving a *domestic* dividend from its subsidiaries is generally allowed to deduct all or a portion of that dividend from its taxable income. 26 U.S.C. §§ 241 and 243. A corporation receiving a *foreign* dividend is only allowed to claim a deduction for the foreign taxes that were paid by the foreign affiliate to earn the funds represented by that dividend. 26 U.S.C. § 164. Alternatively, if a domestic parent corporation, owning at least ten percent of the voting stock of a foreign corporation from which it received dividends during a calendar tax year, elects to include in income an amount equal to the foreign taxes that are deemed attributable to the foreign dividend, it can claim a credit against its own tax liability for those foreign taxes. 26 U.S.C. §§ 901, 902.

A corporation's Rhode Island net income is defined as federal taxable income for years ending after December 31, 1984, and for prior years as federal gross income adjusted by a limited series of additions and subtractions. Section 44–11–11. Pursuant to § 44–11–12 a corporation was and continues to be able to exclude from its Rhode Island net income "dividends received from the shares of stock of * * * any corporation liable to a tax imposed by this chapter." Since the tax imposed by chapter 11 of title 44 is on any corporation deriving income from Rhode Island, or engaging in activities for profit or gain in Rhode Island, the statute creates an exemption for dividends paid by corporations with a nexus to Rhode Island.

---

1. Dart's additional tax liability was reduced to $77,223 for 1981, $131,598 for 1982, and $248,-744 for 1983.

Additionally, because § 44–11–11 bases its definition of net income upon federal taxable income, net income for Rhode Island tax purposes will not include dividends paid by domestic corporations. Unlike its federal counterpart, § 44–11–11 does not allow a corporation receiving foreign dividend income to credit that income against its Rhode Island tax liability for any portion of the foreign taxes attributable to foreign dividend income. Furthermore, because the federal tax code provides for only a limited deduction with respect to such dividends, the federal tax credit is usually more valuable to the taxpayer. 26 U.S.C. §§ 901, 902; *see Kraft,* 505 U.S. at —— n. 11, 112 S.Ct. at 2368 n. 11, 120 L.Ed.2d at 62 n. 11. Therefore, because the taxpayer invariably chooses the federal tax credit over the federal deduction and Rhode Island has no counterpart to the federal credit, foreign dividends are usually taxable as net income in Rhode Island.

At the formal administrative hearing, Dart contended that § 44–11–11's disparate treatment of foreign and domestic dividends violated the Foreign Commerce and Equal–Protection Clauses of the United States Constitution.[2] The presiding adjudicative officer, in a written recommendation to the tax administrator rejected Dart's constitutional arguments, reasoning that they would be better suited to the federal courts.[3] The tax administrator adopted the written recommendation in his Final Decision and Order dated December 3, 1986. As mandated by G.L.1956 (1985 Reenactment) § 8–8–26 and § 44–11–35,[4] as amended by P.L.1982, ch. 388, §§ 3, 8. Dart prepaid the revised tax assessments plus the accrued statutory interest and then availed itself of the opportunity for a *de novo* review of the administrator's Final Decision and Order in the Sixth Division District Court. Section 44–11–35; § 8–8–24 through § 8–8–32.

The parties filed a written stipulation of facts with the District Court. The two issues offered for the District Court's review were whether §§ 44–11–11 and 44–11–12 violated the Foreign–Commerce Clause and/or the Equal–Protection Clause of the United States Constitution. On June 19, 1991, the District Court upheld the constitutionality of §§ 44–11–11 and 44–11–12 in a written decision and judgment. The District Court subsequently issued a revised decision and judgment clarifying that Dart was not entitled to a refund of taxes paid.

Following the District Court's decision, Dart simultaneously filed a petition for writ of certiorari to this court and a motion to reconsider to the District Court. The District Court denied the motion to reconsider, whereupon Dart filed another petition for writ of certiorari to this court. We granted both petitions and consolidated them for briefing and argument. During the interim between granting certiorari and docketing the matters, the United States Supreme Court issued *Kraft, supra.* In an order dated February 12, 1993, we remanded the case back to the District Court "for reconsideration of the issues in light of *Kraft* and for a determination of whether *Kraft* [should] be applied prospectively only or retroactively also." *Dart Industries, Inc. v. Clark,* 619 A.2d 1130, 1131 (R.I.1993).

---

2. Article I, section 8, of the United States Constitution provides that "[t]he Congress shall have power * * * [t]o regulate commerce with foreign nations." The Fourteenth Amendment to the United States Constitution states, "[n]o state shall * * * deny to any person within its jurisdiction the equal protection of the laws."

3. The presiding adjudicative officer also rejected Dart's claim that if the foreign dividends are to be included in gross income, then an adjustment to the apportionment formula should be allowed, as well as Dart's argument that expenses incurred on Dart's behalf by its parent corporation should be allowed to reduce Dart's gross income subject to tax in Rhode Island. However, these issues have not been raised in the petition.

4. General Laws 1956 (1980 Reenactment) § 44–11–35, as amended by P.L.1982, ch. 388, §§ 3, 8, in relevant part states, "The taxpayer's right to appeal hereunder shall be expressly made conditional upon prepayment of all taxes, interest and penalties" unless the taxpayer is granted an exemption by meeting the very stringent requirements of G.L.1956 (1985 Reenactment) § 8–8–26 by proving that the taxpayer has a reasonable probability of success on the merits and is financially unable to pay the taxes due. Section 8–8–26 also contains a nearly identical prepayment requirement.

On remand the District Court issued a written decision and judgment determining that *Kraft* applied retrospectively and required the invalidation of § 44–11–11 under the Foreign–Commerce Clause. The District Court further concluded that Rhode Island law required a refund of Dart's prepaid taxes and that the predeprivation remedies available to a Rhode Island taxpayer were inadequate to satisfy the due-process clause of the Fourteenth Amendment to the United States Constitution so as to preclude a claim for refund.

■ We granted certiorari to now determine the following three issues raised by the administrator: (1) whether the United States Supreme Court's *Kraft* decision should apply retroactively, (2) whether § 44–1–11 entitles Dart to a refund of prepaid taxes, and (3) whether Rhode Island's predeprivation remedies were sufficient under the due-process clause of the Fourteenth Amendment to the United States Constitution.

In the first issue raised in the petition, the administrator contends that the District Court erred in applying the United States Supreme Court's decision in *Kraft* retrospectively to invalidate § 44–11–11 under the Foreign–Commerce Clause. The administrator avers that the United States Supreme Court continues to adhere to the three-pronged equitable analysis enunciated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (*Chevron Oil*), albeit in narrower circumstances, to determine when a Supreme Court decision is to be given retrospective application. According to the administrator, under a *Chevron Oil* analysis, *Kraft* should not be applied retrospectively.

However, in the recent case of *Harper v. Virginia Department of Taxation,* 509 U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (*Harper*), the United States Supreme Court appears to have virtually eviscerated *Chevron Oil*'s equitable analysis in the civil context. In so doing, the U.S. Supreme Court has apparently put an end to the recent and ongoing debate over the continued vitality of *Chevron Oil.* *See James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (*James Beam*) (opin-

ion joined by one justice stating that retroactive application of new decision applies over a *Chevron Oil* analysis; three-justice concurrence declaring that any new decision must be applied retroactively because of the nature of judicial review; three dissenting justices stating that *Chevron Oil* retains its vitality); *American Trucking Associations, Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (four-justice plurality using *Chevron Oil* to determine retroactivity of a decision); *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (dicta stating that "civil retroactivity * * * continues to be governed by the standard announced in *Chevron Oil* ").

Prior to *Harper* the Supreme Court had already discarded this type of equitable analysis in the criminal context. *See Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (all newly declared rules must be applied to all criminal cases pending on direct review, *overruling Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)). Thus, *Harper* appears to be the culmination of the United States Supreme Court's efforts to prohibit from consideration the " 'particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from retroactive application of the new rule" in determining the retrospective application of a recent decision. *Harper,* 509 U.S. at ——, 113 S.Ct. at 2517, 125 L.Ed.2d at 86 (quoting in part *James Beam,* 501 U.S. at 543, 111 S.Ct. at 2447, 115 L.Ed.2d at 493); *see Griffith, supra.*

Although much of *Harper* 's analysis concerning retroactivity is in sweeping dicta, the decision unequivocally reinforces the *James Beam* plurality mandating that when the Supreme Court

"applies a rule of federal law to the parties before it, *that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review* and as to all events, regardless of whether such events predate or postdate our announcement of the rule." (Emphasis added.) *Harper,* 509 U.S. at ——, 113 S.Ct. at 2517, 125 L.Ed.2d at 86.

Only in the narrow circumstance in which the Supreme Court expressly "reserve[s] the question [of] whether its holding should be applied to the parties before it" will the above rule be inapplicable. *Id.* at ——, 113 S.Ct. at 2518, 125 L.Ed.2d at 86–87 (quoting *James Beam,* 501 U.S. at 539, 111 S.Ct. at 2445, 115 L.Ed.2d at 490).

Furthermore, the Supreme Court has made clear that "the legal imperative 'to apply a rule of federal law retroactively after the case announcing the rule has already done so' must 'prevai[l] over any claim based on a *Chevron Oil* analysis.' " *Harper,* 509 U.S. at ——, 113 S.Ct. at 2518, 125 L.Ed.2d at 87 (quoting *James Beam,* 501 U.S. at 540, 111 S.Ct. at 2446, 115 L.Ed.2d at 491). "Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of State law * * * cannot extend to their interpretations of federal law." *Harper,* 509 U.S. at ——, 113 S.Ct. at 2519, 125 L.Ed.2d at 88. Consequently we have no alternative but to apply *Kraft* retroactively. As such, with *Kraft* as guidance, we now turn to address the constitutional validity of § 44–11–11.[5]

■ In a manner similar to the Iowa statute at issue in *Kraft,*[6] Rhode Island's § 44–11–11 treats dividends paid by a foreign corporation less favorably than those paid by domestic corporations. Although the Rhode Island and Iowa statutes differ in minor respects, the fatal flaw in the Iowa statute is present in § 44–11–11: a preference for domestic commerce over foreign commerce.

*See Kraft,* 505 U.S. at ——, 112 S.Ct. at 2370, 120 L.Ed.2d at 67–68; Iowa Code § 422.35 (1981). As such, we are compelled to hold that § 44–11–11 "facially discriminates against foreign commerce and therefore violates the Foreign Commerce Clause." *Kraft* 505 U.S. at ——, 112 S.Ct. at 2372, 120 L.Ed.2d at 69.

The administrator further contends that even if *Kraft* applies retroactively, § 44–1–11[7] does not entitle Dart to a refund of that part of the prepaid taxes attributable to foreign-paid dividends.[8] Citing numerous canons of statutory construction, the administrator avers that the terms "overpayment" and "erroneous payment" contained in § 44–1–11 do not allow a refund for "illegal" or "unauthorized" payments.

It is well settled that in determining questions of statutory construction this court has an obligation to ascertain the Legislature's intent. *State v. Benoit,* 650 A.2d 1230, 1232 (R.I.1994); *State v. Kane,* 625 A.2d 1361, 1363 (R.I.1993); *Gilbane Co. v. Poulas,* 576 A.2d 1195, 1196 (R.I.1990). When the statute is clear and unambiguous on its face, the Legislature's intent is gleaned from the plain and literal language contained therein. *Benoit,* 650 A.2d at 1232; *Kane,* 625 A.2d at 1363; *Providence Journal Co. v. Sundlun,* 616 A.2d 1131, 1135 (R.I.1992). "[I]n enacting a statute the [L]egislature is presumed to have intended that every word, sentence, or provision has some useful purpose and will have some force and effect." *State v. Reis,*

5. The administrator declares that he is not now pressing a constitutional defense of § 44–11–11 "on the grounds of mootness as the statute is currently being interpreted and applied [by the administrator] in light of *Kraft.*" Nonetheless, he prefaces these remarks by stating that he "does not concede § 44–11–11 was unconstitutional." Given this curious position, we deem it necessary to address the constitutionality of § 44–11–11.

6. *See* Iowa Code § 422.35 (1981).

7. General Laws 1956 (1980 Reenactment) § 44–1–11 is a refund statute providing that

"[w]henever an erroneous payment, or any payment in excess of the correct amount of any tax, excise, fee, penalty, interest, or other charge shall have been made to the tax admin-

istrator, the general treasurer shall, after certification by the tax administrator with the approval of the director of administration, refund such erroneous payment or overpayment, or the tax administrator may credit the same against any tax then or thereafter due, as the circumstances may warrant."

8. The administrator also argues that Rhode Island's predeprivation process withstands federal due-process scrutiny. *See Reich v. Collins,* —— U.S. ——, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994); *Harper v. Virginia Department of Taxation,* 509 U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). However, given our interpretation of § 44–1–11, we need not reach the adequacy of Rhode Island's predeprivation procedures.

430 A.2d 749, 752 (R.I.1981). Moreover, this court will not ascribe to the Legislature an intent that leads to an absurd or unreasonable result. *State v. McDonald,* 602 A.2d 923, 926 (R.I.1992); *Trembley v. City of Central Falls,* 480 A.2d 1359, 1363 (R.I.1984); *Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co.,* 466 A.2d 1153, 1156 (R.I. 1983).

With these principles firmly in mind, we are of the opinion that the term "erroneous payment" contained in § 44–1–11 is broad enough to encompass taxes paid pursuant to a statute that is later found to be unconstitutional or otherwise illegal. Although the administrator vigorously argues that § 44–1–11 encompasses only inaccurate computations of a tax, unintentional payment of excess taxes, and the intentional payment of a correctly computed tax under a misinterpretation of law, this overly stringent construction unreasonably and unduly restricts the statute. For by including the term "erroneous payment" in addition to "overpayment," the General Assembly has gone further than just requiring payments made because of mistakes in mathematical computation or through similar types of inadvertence to be refunded.

Our interpretation of § 44–1–11 is further bolstered when the administrator's interpretation of the statute is considered in light of Rhode Island's predeprivation procedures. Pursuant to §§ 8–8–26 and 44–11–35, as a precondition of litigating a final decision of the tax administrator, a taxpayer must prepay "all taxes, interest and penalties" unless under § 8–8–26 the taxpayer has a "reasonable probability of success on the merits" *and* is financially unable to pay the tax. Thus, under the administrator's interpretation a financially solvent taxpayer, such as Dart, must prepay a contested tax in order to contest its lawfulness and even *if successful* is *not* entitled to a refund under § 44–1–11.

As such, the taxpayer would be left in the quandary of either acquiescing in an adverse final decision of the tax administrator or being compelled to prepay the tax in order to litigate even though the taxpayer would be automatically denied a refund if successful. As we previously noted, in interpreting a statute, "this court will not attribute to the Legislature an intent that leads to an absurd or unreasonable result." *Benoit,* 650 A.2d at 1233 (citing *McDonald,* 602 A.2d at 926). Therefore, we now hold that § 44–1–11 requires a refund when a taxpayer has prepaid a tax and is subsequently successful in challenging the legality of that tax.

Consequently the petition for certiorari is denied in part and granted in part, and the writ heretofore issued is quashed. The District Court's decision is affirmed with respect to the retroactive application of *Kraft* and its interpretation of §§ 44–1–11 and 44–11–11. The portion of the District Court's opinion invalidating Rhode Island's predeprivation procedures is vacated. The case is remanded to the District Court to enter an order directing the tax administrator to issue a refund of the taxes paid by Dart in 1981, 1982 and 1983 that were attributable to foreign dividend income.