1997–NMSC–005

931 P.2d 730

**CONOCO, INC., and Intel Corporation, Plaintiffs–Petitioners,**

v.

**TAXATION AND REVENUE DEPART-MENT OF the STATE OF NEW MEX-ICO, Defendant–Respondent.**

**Nos. 22995, 23045.**

Supreme Court of New Mexico.

Nov. 26, 1996.

Rehearing Denied Jan. 23, 1997.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Curtis W. Schwartz, Timothy C. Holm, Santa Fe, Morrison & Foerster, Paul H. Frankel, Walter Hellerstein, Hollis L. Hyans, Irwin M. Slomka, New York City, for Petitioners.

Tom Udall, Attorney General, Bruce J. Fort, Special Assistant Attorney General, Santa Fe, for Respondent.

Mack Easley, Albuquerque, for Amicus Curiae Committee on State Taxation.

Taichert, Wiggins, Virtue & Najjar, Daniel A. Najjar, Santa Fe, for Amicus Curiae Intel Corporation.

## OPINION

RANSOM, Justice.

1. We here review the constitutionality of New Mexico's formulaic tax scheme for dividends received by a parent corporation from its foreign subsidiaries notwithstanding that dividends received from domestic subsidiaries are excluded entirely from the parent's tax base. This opinion has been amended pursuant to order entered January 23, 1997, in response to motions for clarification and reconsideration. Conoco, Inc., and Intel Cor-

poration had sought the refund of taxes paid by them as separate corporate entities for 1988, 1989, and 1990 over and above their tax liabilities if dividends received from foreign subsidiaries had been deducted from their respective tax bases. Hearing officers for the New Mexico Taxation and Revenue Department denied the refunds. In the Conoco case the hearing officer also upheld an assessment issued by the Department against Conoco for underpaid taxes for 1991. Conoco and Intel each appealed to the Court of Appeals.

2. The Court of Appeals decided Conoco's case first and held that the applicable New Mexico corporate income tax scheme does not treat dividends received from foreign subsidiaries less favorably than those received from domestic subsidiaries and therefore is not violative of the Foreign Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3. *Conoco, Inc. v. Taxation & Revenue Dep't*, 122 N.M. 745, 931 P.2d 739 (Ct.App.1995). We granted certiorari, 120 N.M. 68, 898 P.2d 120 (1995), and allowed Intel to file an amicus curiae brief. The Court of Appeals then held in an unpublished memorandum opinion that the Intel appeal was governed by its decision in *Conoco*. We granted certiorari for consolidation with *Conoco*. We find that the applicable New Mexico corporate income tax scheme is unconstitutional, and we reverse the Court of Appeals.

3. *The Taxpayers.* Conoco and Intel both conduct business in New Mexico. Conoco's primary business in New Mexico is exploration, production, and distribution of oil and gas products. Conoco is a wholly owned subsidiary of E.I. Du Pont de Nemours and Company. Intel's primary business in New Mexico is the manufacture of microcomputer components. Both corporations conduct business worldwide through numerous domestic and foreign subsidiaries. None of the foreign subsidiaries conduct business in New Mexico. During all relevant years, both Conoco and Intel filed New Mexico corporate income tax returns as "separate corporate entities."

■ 4. *New Mexico tax scheme.* In *Conoco*, reported immediately following our instant opinion, Chief Judge Apodaca of the Court of Appeals provides a discussion of the New Mexico corporate income tax scheme. Aside from the Foreign Commerce Clause, on which this case turns, there are other constraints on a state's power to tax multijurisdictional business entities. The Due Process Clause of the Fourteenth Amendment requires "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. v. Maryland,* 347 U.S. 340, 344–45, 74 S.Ct. 535, 539, 98 L.Ed. 744 (1954). A state tax on business activities occurring outside the state satisfies the due process clause only if "the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return." *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 (1940), *quoted in ASARCO Inc. v. Idaho State Tax Comm'n,* 458 U.S. 307, 315, 102 S.Ct. 3103, 3108, 73 L.Ed.2d 787 (1982). To ensure that the state does not tax value attributable to business conducted outside of the state, a state must use some type of apportionment formula to determine what income was earned within the state and also what portion of income earned extraterritorially is attributable to the corporation's instate business activity. *See Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 439–40, 100 S.Ct. 1223, 1232–33, 63 L.Ed.2d 510 (1980).

5. To a corporate taxpayer's base income New Mexico applies an apportionment formula pursuant to the Uniform Division of Income for Tax Purposes Act, NMSA 1978, §§ 7-4-1 to –21 (Repl.Pamp.1995) ("UDITPA"). UDITPA uses a three-part formula to apportion income between that which is subject to New Mexico taxation and that which is not. This apportionment method divides a corporation's assets into a property factor, a payroll factor, and a sales factor. *See* NMSA 1978, § 7-4-10 (Repl.Pamp.1995). To determine each of the factors, the in-state value of an asset is divided by the total value of the asset (including in-state and out-of-state value). The resulting three fractions are then

added together and divided by three to create a multiplier that is applied to the corporation's total income. This calculation yields the apportioned income that is subject to taxation in New Mexico. *Id.* As discussed later under the "Detroit formula" heading, the Department has attempted to similarly apportion foreign subsidiary dividends to satisfy Foreign Commerce Clause considerations. Whether the Detroit formula satisfies the Foreign Commerce Clause is the determinative issue of this case.

6. —*Separate corporate entity.* During the years relevant to this case, corporations filing tax returns in New Mexico could choose from four different income reporting methods: separate accounting, separate corporate entity, combination of unitary corporations, or federal consolidated group. *See* Regulations Pertaining to the Corporate Income and Franchise Tax Act, N.M. Tax. and Rev. Dep't, Rule CIT 9:2(B) (1992) (Reporting Methods). Both Conoco and Intel elected to file according to the separate corporate entity method, in which the corporation reports its entire income, to which an apportionment formula is then applied. Under this method a corporation reports income separate from the rest of a unitary group or a group defined by the federal consolidated method. The income *of* subsidiary corporations is not reported or considered for apportionment. *Id.* at 2:10 (Separate Corporate Entity).

7. Like at least thirty-nine other states, New Mexico uses a corporate taxpayer's federal taxable income, with the deductions allowed by 26 U.S.C. § 243 (1988), as the "base income" for state income tax purposes. *See* NMSA 1978, § 7-2A-2(C) (Repl.Pamp.1995). Since the entire earnings of domestic subsidiaries are already subject to federal taxation, section 243 of the Internal Revenue Code avoids multiple taxation by allowing corporations to deduct dividends received from domestic subsidiaries. Therefore, dividends from domestic subsidiaries are not included in federal taxable income. To eliminate multiple taxation of earnings of foreign subsidiaries, the federal government allows a subsequent credit to corporations for taxes paid to foreign governments. 26 U.S.C. § 901

(1988). However, dividends from foreign subsidiaries are initially included in federal taxable income. By using federal taxable income as a base, New Mexico excludes domestic but includes foreign dividend income in the state base income. Conoco and Intel contend that including foreign subsidiary dividends in the calculation of New Mexico taxable income while excluding domestic subsidiary dividends facially discriminates against foreign commerce in violation of the Foreign Commerce Clause. *See Kraft Gen. Foods v. Iowa Dep't of Revenue,* 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992).

8. In *Kraft,* the U.S. Supreme Court held that Iowa's corporate income tax scheme facially discriminated against foreign commerce in violation of the Foreign Commerce Clause. Iowa, like New Mexico, used federal taxable income as the base income for state income tax purposes, but unlike New Mexico it did not apply the Detroit formula. Iowa made several arguments in support of the proposition that its differential treatment did not constitute prohibited discrimination, but each of these arguments was rejected by the Court. *Id.* at 74-82, 112 S.Ct. at 2368-72. The Court held that the fact corporations could change their domicile or corporate structure to avoid the disparate effects of the tax did not make the tax constitutional. *Id.* at 74-78, 112 S.Ct. at 2368-69. The Court also rejected Iowa's argument that because the tax did not favor local commerce it did not violate the Foreign Commerce Clause. "As the absence of local benefit does not eliminate the international implications of the discrimination, it cannot exempt such discrimination from Commerce Clause prohibitions." *Id.* at 79, 112 S.Ct. at 2370.

9. Iowa's claim that its tax scheme was intended to promote administrative convenience rather than economic protectionism was also insufficient to make it valid. *Id.* at 81-82, 112 S.Ct. at 2371-72. While adopting the federal definition of "taxable income" may bring significant benefits in terms of administrative convenience to both Iowa taxpayers and tax collectors, the Court found these benefits were not the sort of "compelling justification" capable of saving a statute that facially discriminates against foreign

commerce. *Id.* (citing *Philadelphia v. New Jersey,* 437 U.S. 617, 626–28, 98 S.Ct. 2531, 2536–38, 57 L.Ed.2d 475 (1978); *Maine v. Taylor,* 477 U.S. 131, 148, n. 19, 106 S.Ct. 2440, 2453, n. 19, 91 L.Ed.2d 110 (1986)). The Court observed that "Iowa could enjoy substantially the same administrative benefits by utilizing the federal definition of taxable income, while making adjustments that avoid the discriminatory treatment of foreign subsidiary dividends." *Id.* 505 U.S. at 81, 112 S.Ct. at 2371. In the wake of *Kraft,* other states' corporate tax schemes have come under Foreign Commerce Clause scrutiny, with varied results.

10. In *Dart Industries, Inc. v. Clark,* 657 A.2d 1062, 1066 (R.I.1995), the Supreme Court of Rhode Island held that Rhode Island's corporate tax scheme violated the Foreign Commerce Clause because of its similarity to the tax scheme invalidated in *Kraft.* Like Iowa and New Mexico, Rhode Island included dividend income from foreign subsidiaries in the tax base of the parent corporation, but excluded dividend income from domestic subsidiaries. In calculating its net income for the tax years in question, Dart Industries, like Conoco and Intel in this case, excluded foreign dividend income. After reviewing the Rhode Island tax scheme, the *Dart* court held that *Kraft* was controlling.

> In a manner similar to the Iowa statute at issue in *Kraft,* Rhode Island's [tax scheme] treats dividends paid by a foreign corporation less favorably than those paid by domestic corporations. Although the Rhode Island and Iowa statutes differ in minor respects, the fatal flaw in the Iowa statute is present in [the Rhode Island statute]: a preference for domestic commerce over foreign commerce. As such, we are compelled to hold that [the Rhode Island scheme] "facially discriminates against foreign commerce and therefore violates the Foreign Commerce Clause."

*Id.* at 1066 (quoting *Kraft*) (citations omitted).

11. In *In re Appeal of Morton Thiokol, Inc.,* 254 Kan. 23, 864 P.2d 1175 (1993), the Supreme Court of Kansas upheld a state corporate income tax scheme utilizing the domestic combination method of apportionment. Under this method, a member of a unitary corporation, whose "various parts are interdependent and of mutual benefit so as to form one integral business," is taxed on the apportioned share of the income of all members doing business in the United States, regardless of country of origin, and dividends paid by foreign subsidiaries. *Id.* at 24–25, 864 P.2d at 1178. The court noted the analogies between this tax scheme and Iowa's, but determined that the inclusion of income of domestic subsidiaries into the parent's tax base distinguished Kansas' scheme from Iowa's.

> [In *Kraft,* t]he Supreme Court compared a parent corporation with a domestic subsidiary which does not do business in Iowa to a parent corporation with a foreign subsidiary which does not do business in Iowa. In this comparison, Iowa discriminated against the parent corporation with the foreign subsidiary because Iowa allowed a deduction for the dividends received by the parent with the domestic subsidiary, but not for the dividends received by the parent with the foreign subsidiary.... [However,] *Kraft* "does not address the taxation of foreign dividends by domestic combination states." Clearly, *Kraft* does not hold that the taxation of foreign dividends by a combination method is facially unconstitutional.... Allowing a deduction for the domestic dividend avoids double taxation. It is the use of the domestic combination method which distinguishes the Kansas and Iowa tax schemes.

*Id.* at 37–39, 864 P.2d at 1186 (quoting argument of Department of Revenue).

12. Most recently, the Maine Supreme Judicial Court upheld the constitutionality of Maine's corporate tax scheme, which utilizes the "water's edge combined reporting method." *E.I. Du Pont de Nemours & Co. v. State Tax Assessor,* 675 A.2d 82, 84–85 (Me. 1996). Under this method of apportionment, income earned by domestic subsidiaries is included in the amount apportioned to Maine. Thus Maine directly taxes an apportioned part of the domestic subsidiary's income. "Maine's use of the water's edge combined reporting method limits the State to the nation's boundaries in calculating corporate in-

come, and hence no income of foreign subsidiaries is apportioned to Maine." *Id.* at 87. The Assessor adds foreign subsidiary dividends paid to the domestic parent "because these dividends represent value earned by the parent that is not otherwise captured." *Id.* at 87–88. Echoing the reasoning of the *Morton Thiokol* court, the *Du Pont* court noted that "[i]n *Kraft*, the Supreme Court considered the constitutionality only of Iowa's single entity reporting system." *Id.* at 87. The court held that *Kraft* did not apply to the Maine tax scheme because "[f]ar from discriminating against foreign commerce, Maine's water's edge combined reporting method provides a type of 'taxing symmetry' that is not present under the single entity system." *Id.* at 88.

> Although the dividends paid to parent corporations with domestic subsidiaries are not taxed, the apportioned income of the domestic subsidiaries is subject to tax. Because the income of the unitary domestic affiliates is included, apportioned, and ultimately directly taxed by Maine as part of the parent company's income, the inclusion of dividends paid by foreign subsidiaries does not constitute the kind of facial discrimination against foreign commerce that caused the Supreme Court to invalidate Iowa's tax scheme in *Kraft*. Thus, Maine's use of a water's edge combined reporting method distinguishes Maine's taxing scheme from the scheme invalidated by the United States Supreme Court in *Kraft*.

*Id.* Like the Supreme Court of Kansas in *Thiokol*, the *Du Pont* Court was able to distinguish the challenged tax scheme from Iowa's tax scheme because Maine included a portion of the domestic subsidiaries' income in the tax base of the parent. However, this "taxing symmetry" is not present in the New Mexico tax scheme.

13. The tax schemes of Kansas and Maine have been upheld as distinguishable from the Iowa and Rhode Island schemes invalidated in *Kraft* and *Dart*. New Mexico's corporate tax scheme is virtually identical to Iowa's and Rhode Island's, except for its use of the Detroit formula. Therefore, the New Mexico tax scheme violates the Foreign Commerce Clause unless saved by the Detroit formula.

■ 14. *—The Detroit formula.* The Detroit formula, named after an agreement between the Ford Motor Company and the city of Detroit, operates to reduce the New Mexico taxable income base by adding into the denominators of the parent corporation's property, payroll, and sales a portion of the property, payroll, and sales of dividend-producing foreign subsidiaries. *See* Regulation UDI 19:10 (issued March 17, 1994, effective retroactively to January 1, 1988). This portion is determined by dividing the net dividends the parent corporation receives from foreign subsidiaries by these subsidiaries' total net profit. *Id.* This addition into the divisors lowers the fractional multiplier used against a taxpayer's total income, which lowers its New Mexico taxable income base.

■ 15. The Department argues that the application of the formula remedies the differential treatment of domestic and foreign commerce under the New Mexico tax scheme by thus reducing the taxable income base. The formula, however, does not eliminate dividends paid by foreign subsidiaries in every case. In particular, it did not do so in these two cases. The hearing officer below found that the Taxpayers were paying more taxes under the Detroit formula than if the dividends from foreign subsidiaries were excluded. The hearing officer also stated that it was doubtful that every dollar paid by foreign subsidiaries was excluded from the tax base through the application of the Detroit formula. *Kraft* clearly requires that foreign and domestic commerce be treated equally, and the New Mexico tax scheme fails to do this, even with the Detroit formula.

■ 16. As the Supreme Judicial Court of Massachusetts noted with respect to discriminatory taxes in interstate commerce, "the extent of the economic burden imposed by the excise 'is of no relevance to the determination whether a State has discriminated against interstate commerce.'" *Perini Corp. v. Commissioner of Revenue*, 419 Mass. 763, 770, 647 N.E.2d 52, 57 n. 7 (1995) (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 455, 112 S.Ct. 789, 800–01, 117 L.Ed.2d 1 (1992)).

"When a tax, on its face, is designed to have discriminatory economic effects, the Court 'need not know how unequal the Tax is before concluding that it unconstitutionally discriminates.'" *Id.* (quoting *Westinghouse Elec. Corp. v. Tully,* 466 U.S. 388, 406–07, 104 S.Ct. 1856, 1867–68, 80 L.Ed.2d 388 (1984) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 760, 101 S.Ct. 2114, 2136, 68 L.Ed.2d 576 (1981))). Accordingly, we hold that taxing of dividends from foreign subsidiaries under the separate corporate entity method is unconstitutional, even with the Detroit formula.

17. *Taxpayers' burden of proof.* The Department relies on the Taxpayers' failure to meet their burden of proof under *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), in which the Court required a defendant challenging pretrial detention based on future dangerousness under the Bail Reform Act to show that "no set of circumstances exists under which the Act would be valid. The fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid...." *Id.* at 745, 107 S.Ct. at 2100. Dissenting in *Kraft,* Chief Justice Rehnquist unsuccessfully argued for the application of the no-set-of-circumstances test, quoting this language from *Salerno. Kraft,* 505 U.S. at 82–83, 112 S.Ct. at 2371–72 (Rehnquist, C.J., dissenting). The Department interprets this language to mean that the Taxpayers have the burden of proving that New Mexico's corporate income tax scheme discriminates against every conceivable taxpayer in order to prove that the tax is facially discriminatory.

18. This language in *Salerno* and subsequent cases involving due process challenges lend some support to the proposition that *Salerno* articulated the burden of proof for any facial challenge to the constitutionality of a statute. *See Reno v. Flores,* 507 U.S. 292, 300, 113 S.Ct. 1439, 1446, 123 L.Ed.2d 1 (1993) (applying *Salerno* to due process challenge to Immigration and Naturalization Service regulations regarding release of alien juveniles from detention); *Rust v. Sullivan,* 500 U.S. 173, 183, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991) (applying *Salerno* to uphold Health and Human Services regulations limiting ability of Title X fund recipients to engage in abortion-related activities); *Caplin & Drysdale v. United States,* 491 U.S. 617, 634, 109 S.Ct. 2646, 2657, 105 L.Ed.2d 528 (1989) (requiring challenger of forfeiture action on due process grounds to show forfeiture rule was "inherently unconstitutional"); *Dean v. McWherter,* 70 F.3d 43, 45 (6th Cir.1995) (applying no-set-of-circumstances test to a Fourteenth Amendment due process challenge in upholding Tennessee law labelling sex offenders "a species of mentally ill persons in the eyes of the general assembly"); *Jordan by Jordan v. Jackson,* 15 F.3d 333, 343–44 (4th Cir.1994) (relying on no-set-of-circumstances test against due process facial challenge to uphold Virginia statute delaying judicial review of emergency child custody decisions).

19. However, the test also has been questioned. *See Janklow v. Planned Parenthood,* —— U.S. ——, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996) (memorandum of Stevens, J., respecting denial of certiorari). Justice Stevens drew a distinction between the longstanding principle that a facial challenge to a statute must do more than show it might operate unconstitutionally in some conceivable set of circumstances and *Salerno's* "rhetorical flourish" that went well beyond that principle in requiring a litigant to establish that there is no set of circumstances under which the statute would be valid. *Id.* at ——, 116 S.Ct. at 1583.

> That statement was unsupported by citation or precedent. It was also unnecessary to the holding in the case, for the Court effectively held that the statute at issue would be constitutional as applied in a large fraction of cases.... [T]he dicta in *Salerno* "does not accurately characterize the standard for deciding facial challenges," and "neither accurately reflects the Court's practice with respect to facial challenges, nor is it consistent with a wide array of legal principles." For these reasons, *Salerno's* rigid and unwise dictum has been properly ignored in subsequent cases even outside the abortion context.

*Id.* (citations omitted) (quoting Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan.L.Rev. 235, 236, 238 (1994)). *Contra Janklow,* —— U.S. at ——, 116 S.Ct. at 1582 (Scalia, J., joined by Rehnquist, C.J., Thomas, J., dissenting from denial of certiorari) (strongly dissenting from Justice Stevens' memorandum). In *Planned Parenthood, Sioux Falls Clinic v. Miller,* 63 F.3d 1452 (8th Cir.1995), the Eighth Circuit did not follow *Salerno* because it believed "the Court effectively overruled *Salerno* for facial challenges to abortion statutes." *Id.* at 1458 (same case as *Janklow*). In *Casey v. Planned Parenthood,* 14 F.3d 848, 863 (3rd Cir.1994), the Third Circuit questioned *Salerno* and noted that in *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the Court did not follow *Salerno* and apparently replaced the no-set-of-circumstances standard with the less stringent large fraction test.

20. If the application of the no-set-of-circumstances test to due process challenges is questionable, its application to this Foreign Commerce Clause challenge is even more questionable. In *Kraft* the majority declined to accept Chief Justice Rehnquist's invitation to apply *Salerno* and uphold Iowa's tax scheme. *Kraft,* 505 U.S. at 82–87, 112 S.Ct. at 2371–74. The rationale behind the Court's decision in *Kraft* is instructive. It considered and rejected an argument advanced by Iowa and the United States that corporations could avoid the differential treatment of domestic and foreign commerce if they were organized differently. *Id.* at 78, 112 S.Ct. at 2369–70. If the no-set-of-circumstances test had applied, this argument would have been persuasive since it would have shown that under some circumstances the tax could operate constitutionally. Under *Salerno,* this argument would defeat the facial challenge. The *Kraft* Court's rejection of this argument

indicates that the no-set-of-circumstances test did not apply. We note also that *Salerno* was not applied in any of the post-*Kraft* decisions discussed above. *See Morton Thiokol,* 864 P.2d at 1184–86; *Du Pont,* 675 A.2d at 86–88; *Dart,* 657 A.2d at 1062–66.

21. While we recognize that Chief Justice Rehnquist and Justices Scalia and Thomas disagree with Justice Stevens' repudiation of *Salerno* in the context of challenges to abortion-related statutes and perhaps other due process challenges, we also note that *Kraft* indicates that the Chief Justice is alone. among current members of the Court in regarding the *Salerno* test as applicable to Foreign Commerce Clause challenges to corporate income tax schemes. *See Kraft,* 505 U.S. at 72, 112 S.Ct. at 2367 (Stevens, O'Connor, Scalia, Kennedy, Souter, and Thomas, JJ., in the majority; Rehnquist, C.J., in dissent). For this reason, and the reasons articulated above, we do not think the Taxpayers' claims fail merely because the Detroit formula may have the effect of treating dividends from domestic and foreign subsidiaries equally for certain corporations.

22. The meaning of *Kraft* is clear from the decision itself as well as from subsequent state court decisions: a state corporate income tax scheme that treats dividends from foreign subsidiaries less favorably than dividends from domestic subsidiaries facially discriminates against foreign commerce in violation of the Foreign Commerce Clause. *Id.* at 76–82, 112 S.Ct. at 2368–72; *Morton Thiokol,* 864 P.2d at 1183, 1185; *DuPont,* 675 A.2d at 86–88; *Dart,* 657 A.2d at 1066. The mere fact that there may be a set of circumstances in which the tax operates constitutionally will not suffice under *Kraft* to uphold the statute against a challenge to its constitutionality on Foreign Commerce Clause grounds.[1] There-

---

1. The inapplicability of the no-set-of-circumstances test to this challenge to New Mexico's corporate income tax scheme on Foreign Commerce Clause grounds in no way affects New Mexico precedent regarding the rational basis test for equal protection challenges to classifications. *See Marrujo v. New Mexico Highway Transp. Dep't,* 118 N.M. 753, 887 P.2d 747 (1994). In *Marrujo,* we stated that we "will uphold the statute if any state of facts can be discerned that will reasonably sustain the chal-

lenged classification." *Id.* at 758, 887 P.2d at 752. *See also Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988); *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 788, 568 P.2d 1233, 1234 (1977); *Board of Trustees of Las Vegas v. Montano,* 82 N.M. 340, 343, 481 P.2d 702, 705 (1971); *Garcia v. Albuquerque Pub. Sch. Bd.,* 95 N.M. 391, 393, 622 P.2d 699, 701 (Ct.App.1981). This line of cases is still valid as an expression of

fore, we find that the Taxpayers did not have the burden of proving that the New Mexico tax scheme, which discriminated against them individually, would discriminate against every conceivable taxpayer.

■ 23. *Voluntary election.* The Department argues that Conoco and Intel are not entitled to relief because any discrimination against foreign commerce was a result of their decision to utilize separate entity filing over other options. The Department cites footnote 23 from *Kraft* to show that the Court approved domestic combined reporting and therefore argues that the Taxpayers had the option of choosing a constitutional method of filing. The language that the Department cites reads as follows:

> If one were to compare the aggregate tax imposed by Iowa on a unitary business which included a subsidiary doing business throughout the United States (including Iowa) with the aggregate tax imposed by Iowa on a unitary business which included a foreign subsidiary doing business abroad, it would be difficult to say that Iowa discriminates against the business with the foreign subsidiary. Iowa would tax an apportioned share of the domestic subsidiary's entire earnings, but would tax only the amount of the foreign subsidiary's earnings paid as a dividend to the parent.

*Kraft,* at 80, n. 23, 112 S.Ct. at 2371 n. 23. Even if the Court implicitly approved domestic combined reporting, an interpretation we are not inclined to accept and do not adopt in this opinion, the existence of constitutional options should not preclude taxpayer relief from the unconstitutional aspects of the option exercised by the taxpayer. Courts will not ignore constitutional challenges merely because the claimant could have chosen another option, the constitutionality of which is not questioned. *See Conoco,* 122 N.M. at 755, 931 P.2d at 749 (citing *Campbell v. Wood,* 18 F.3d 662, 680 (9th Cir.1994) (reviewing the constitutionality of probation conditions even though incarceration was an option to the probationer), *cert. denied,* 511 U.S. 1119, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994)). In Intel's action before the Department's hearing officer, the officer stated that

the minimum scrutiny test for equal protection

Intel has exercised the right given it by the Secretary in Regulation CIT 9:2 to file under the separate corporate entity filing method. Having made a valid election of filing methods, Intel is entitled to have that filing method applied to it in a constitutional manner.

We agree with both the Court of Appeals and the hearing officer and find that the presence of other reporting options is not relevant to the Taxpayers' claim.

■ 24. *Refund of collected taxes.* The Taxpayers assert that the Department must refund any taxes collected pursuant to an unconstitutional tax. It is true that the Department is authorized to make refunds under certain circumstances. *See, e.g., Neff v. State,* 116 N.M. 240, 245, 861 P.2d 281, 286 (Ct.App.1993). When a tax is found unconstitutional, the Department may "either award full refunds to those burdened by an unlawful tax or issue some other order that 'create[s] in hindsight a nondiscriminatory scheme.'" *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 101, 113 S.Ct. 2510, 2519, 125 L.Ed.2d 74 (1993) (quoting *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 40, 110 S.Ct. 2238, 2252, 110 L.Ed.2d 17 (1990)). *See also Dart,* 657 A.2d at 1067 (requiring under Rhode Island law "a refund when a taxpayer has prepaid a tax and is subsequently successful in challenging the legality of that tax").

■ 25. The Department apparently attempted to create a nondiscriminatory scheme with the retroactive application of the Detroit formula, but this attempt was unsuccessful. On motion for reconsideration, the Department urges this Court to remand these cases to the administrative hearing officer for a determination of an appropriate remedy. While we do not decide the appropriateness of any remedy that may be applied to other taxpayers, the Detroit-formula remedy is the only remedy the Department advanced here in response to the deduction-from-tax-base remedy advocated by Taxpayers. Serial litigation of multiple efforts to craft a remedy for specific taxpayers would

challenges to classifications.

be an affront to judicial economy and the principle of finality.

26. *Conclusion.* Taxation of dividends from foreign subsidiaries under the separate corporate entity method violates the Foreign Commerce Clause of the United States Constitution, and application of the Detroit-formula is an insufficient remedy. Therefore, the opinion of the Court of Appeals is reversed. The refunds sought by the Taxpayers should be allowed and the assessment levied by the Department should be abated.

27. **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA and SERNA, JJ., concur.