DECISION
Before this Court is Defendant Everson Construction Inc.'s[1]
(Everson) motion for summary judgment on the Plaintiff's claim for declaratory and equitable relief. Plaintiff Davis Mobile Home Tenants Association (Tenants Association) claims that it had a right of first refusal, pursuant to the Rhode Island Mobile and Manufactured Homes Act (Mobile Home Act), which gave it the exclusive right to purchase the parcel of real estate on which the Davis Mobile Homes Park is located.See G.L. 1956 § 31-44-3.1(a), (c). Everson sold that real estate, however, to Chimera, Inc. (Chimera) in late 2005. The parties have submitted an agreed statement of facts. The Court has jurisdiction of this matter pursuant to G.L. 1956 § 9-30-1.
 Facts/Travel
Under § 31-44-3.1(c), the tenants association of a mobile home park has a right of first refusal which permits it to match any bona fide offer to purchase the park from the owner. Subject to certain statutory requirements, which the Court will examine below in *Page 2 
greater detail, an incorporated tenants association may assert its right to purchase the park if it has first notified the owner of its existence with a certified letter.
At some point in September 2005, Everson and Chimera agreed to a transfer of the real estate known as the Davis Mobile Homes Park. (Statement of Facts ¶ 7.) The Tenants Association did not exist as a corporate entity at this time.[2] See id. ¶ 1. A deed was prepared and delivered, and the Glocester Land Evidence Records show that it was recorded on September 26, 2005 (September deed). Id. ¶ 9. The parcel described in the September deed, however, was not the Davis Mobile Homes Park. Id. Rather, another parcel of land was erroneously described in the deed. Id.[3] On November 4, 2005, the Tenants Association was incorporated. Id. ¶ 1. Stephen Theriault, the President of the Tenants Association, sent a letter to Everson on November 15, 2005 stating that it was
 "an incorporated home owner's association, and as such, [it has] at least fifty-one percent (51%) of the home owners residing within said park as members and ha[s] articles of incorporation specifying all rights and powers, including the power to negotiate for, and acquire and operate the mobile home park on behalf of the member residents.
 If you intend to accept a bona fide offer to bu[y] the park, please notify the [Tenants Association] before the sale." (Id. ¶ 10; Letter of Theriault to Everson, Nov. 16, 2005.)
The letter satisfies the requirements for the content of such letters under § 31-44-3.1(a). *Page 3 
Shortly thereafter, the parties to the sale apparently discovered the mistake in the September deed. On December 16, 2005, a new deed designated as "Corrective Deed" was filed in the Glocester Land Evidence Records (December deed). Id. ¶ 13. The December deed sets forth as the subject of the conveyance what appears to be an appropriate legal description of the real estate known as the Davis Mobile Homes Park. (Corrective Warranty Deed, Ex. G to Def's Mot. Summ. J.)
The Tenants Association seeks a declaration that the sale from Everson to Chimera is void, and that it must be afforded the right of first refusal provided by § 31-44-3.1. It asserts that Everson should not have caused the corrective deed to be filed without first permitting the Tenants Association to exercise its alleged right to purchase the property. It has also represented to the Court a strong likelihood that it can obtain the requisite financing in order to consummate the sale. Therefore, the Court must determine whether or not the Tenants Association has any rights under the statute which would permit it to buy the property.
The agreement between Everson and Chimera provided for installment payments of the sale price. After this litigation began, some installment payments were deposited into an escrow account pending the outcome of the litigation. Therefore, if the Court finds that the sale was invalid, the Court must also determine how to dispose of the escrowed funds.
 Analysis
Under § 31-44-3.1(c), any "incorporated home owners' association entitled to notice under this section shall have the right to purchase . . . the park, provided it meets the same price and the same terms and conditions of any offer of which it is entitled to *Page 4 
notice under this section. . . ."[4] Therefore, a tenants association only has the right to make a matching offer if (1) it is incorporated and (2) it is entitled to notice. Id.; see § 31-44-3.1(l) (providing that the right of first refusal "shall not apply with respect to any offer received by the owner for which notice to a home owners' association is not required pursuant to this section").
Section 31-44-3.1(a) describes two situations in which an owner must give notice to the tenants association, and applies
 "[i]n any instance in which a mobile home park owner has been sent a certified letter from an incorporated home owner households association indicating that the association has at least fifty-one percent (51%) of the home owner households residing within that park as members, and has articles of incorporation specifying all rights and powers, including the power to negotiate for, acquire, and operate the mobile home park on behalf of the member residents. . . ." Section 31-44-3.1(a).
If these prerequisites have been met, then the owner must notify the association of "any bona fide offer that the owner intends to accept."Id. That notice must be given "before a mobile home park may be sold for any purpose." Id. The owner must also give notice "of any intention to sell . . . the park within fourteen (14) days of any advertisement or other public notice by the owner or his or her agent that the park is for sale." Id. It is the first notice provision which is relevant to this case.
The notice to the tenants association must contain, inter alia, the terms of the offer which the owner intends to accept. See §31-44-3.1(b). Following the giving of notice, the tenants association has 45 days to execute an agreement with the owner providing for the sale (or lease) to the tenants association. Section 31-44-3.1(c)(1). The association *Page 5 
then has another 135 days to obtain any necessary financing or guarantees to consummate the sale. Section 31-44-3.1(c)(2). An owner may not unreasonably refuse to enter into an agreement with a tenants association that has submitted a matching offer. See § 31-44-3.1(d) (requiring that an association's offer "meet the same price and the same terms and conditions of an offer for which notice is required to be given").
The Tenants Association's argument, as the Court understands it, is that at some point not later than September 2005, Chimera made an offer to Everson to purchase the park. No incorporated tenants association existed at that time, so it is clear that no notice requirement — and no right of first refusal — existed in September 2005. Everson then accepted the offer and agreed to sell the real estate. Everson attempted to perform on its promise by conveying a deed, but that deed was defective. Therefore, the Tenants Association argues that when it incorporated in November 2005, and sent its certified letter pursuant to § 3.1(a) of the Mobile Homes Act, it gained a right to receive notice "of any offer that the owner intends to accept" and, therefore, a right of first refusal. See § 31-44-3.1(a), (c).
The Court finds the Tenants Association's argument to be without merit. Regardless of the timing of the conveyances, when the Tenants Association incorporated, Everson had already accepted the offer for the purchase of the mobile home park. The offer had ripened into an enforceable agreement granting contractual rights in favor of Chimera, and creating obligations of Everson. Upon acceptance, there was no longer any "bona fide offer that the owner intend[ed] to accept" because the owner had already accepted the offer. See § 31-44-3.1(a). *Page 6 
While the Tenants Association eventually complied with the prerequisites of receiving notice — incorporation and transmittal of a certified letter — no offer existed on or after November 4, 2005 which would trigger a requirement of notice or a right of first refusal. Neither the execution of the defective September deed, nor the recording of the corrective December deed, constituted an offer within any reasonable definition of the word.[5] Rather, the recording of both deeds were acts of performing the contractual obligations which had been created by the September 2005 agreement. Therefore, for purposes of the statutory requirement that notice be given "before a mobile home park may be sold for any purpose," the Court finds that the park is sold when the owner and buyer consummate a binding purchase and sale agreement.See § 31-44-3.1(a).[6]
The Tenants Association devotes a substantial part of its brief to describing the policies underlying the Rhode Island Mobile and Manufactured Homes Act which, inter alia, creates the right of first refusal. It cannot be disputed that the statute was designed to further the existence of manufactured housing communities, which "provide a viable, affordable housing option to many elderly persons and families of low and moderate income, who are often lacking in resources and deserving of legal protection." Greenfield Country Estates Tenants Ass'nv. Deep, 423 Mass. 81, 83 (Mass. 1996) (interpreting a similar Massachusetts statute). One way to protect such communities is to permit the residents to purchase that community before allowing a transfer of the property. *Page 7 
However, the statute also contains provisions reasonably calculated to protect the interests of owners and buyers, including the requirement that a tenants' association notify owners of its existence. Voiding the sale under the circumstances of this case would be inherently unfair to both Everson and Chimera.[7] At the time of the purchase and sale agreement, the Tenants Association did not exist as a corporate entity and had not transmitted its certified letter pursuant to the statute.[8] Therefore, at the time each party incurred its contractual obligations to the other, there was no possible way to know that a tenants association would attempt to assert is rights under § 31-44-3.1. Even if there had been no error in the September deed, there is often a delay between the execution of a purchase and sale agreement and the actual conveyance of property. Adopting the rationale of the Tenants Association would inject uncertainty into every transaction involving a mobile homes park, because a buyer and seller could never be certain of their rights until the actual conveyance occurs even if they have executed a purchase and sale agreement.
Chimera has now advanced substantial sums of money in reliance on Everson's promise to convey good title to the real estate. If the Court were to void the transaction at this stage, either Chimera or Everson[9] could incur substantial damages as a result. It is clear that the legislature intended existing tenants associations to have an opportunity to *Page 8 
match any offer for the purchase of a mobile home park. See,e.g., Dart Indus. v. Clark, 657 A.2d 1062, 1066 (R.I. 1995) (noting that courts have "an obligation to ascertain the Legislature's intent"). However, the Court does not think that the legislature intended to upset transactions, which have reached the stage of a purchase and sale agreement, where the park's tenants had previously failed to organize and give notice of their existence to the property owner.[10]
 Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court will grant Everson's motion for summary judgment and will deny all of Plaintiff's claims for relief. In addition, the Court will order that the funds presently in escrow be paid to Everson.
Prevailing counsel may present an order and judgment, consistent herewith, which shall be settled after due notice to counsel.
[1] Everson Construction, Inc. was formerly known as Davis Mobile Homes Park, Inc. While all of the pleadings in the case have used the former name, the Court will refer to the present name of this corporate entity.
[2] A prior association with the same name as the Plaintiff Tenants Association did exist in the past. However, it is undisputed that the Plaintiff is a distinct legal entity. The former association has a corporate identification number of 84086 and its articles of incorporation were revoked on September 5, 2001. The present Tenants Association has an identification number of 151847 and was incorporated on November 4, 2005.
[3] The first page of the deed refers to an "Exhibit A" which was supposed to contain a "metes and bounds" description of the Davis Mobile Homes Park. It is reasonable to conclude that somebody attached the wrong page to the deed, because the exhibit describes a parcel of real estate completely unrelated to any of the parties to the transaction.
[4] The omitted portions refer to the situation where an owner is not selling the park, but intends to lease the property for a use "which will result in a discontinuance" of the mobile home park. Section31-44-3.1(a).
[5] "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24; see Black's Law Dictionary 1081 (6th ed. 1990) (defining offer as a "proposal to do a thing or pay an amount, usually accompanied by an expected acceptance, counter-offer, return promise or act. . . .")
[6] Our Court has held in another context that "an executory purchase-and-sale agreement vests in the vendee thereof equitable title to the land involved." George v. Oakhurst Realty, 414 A.2d 471, 473
(R.I. 1980).
[7] The equities of the situation would be quite different if the parties had actual or constructive notice that a tenants association existed, and proceeded to execute a purchase and sale agreement without giving the required notice to the association.
[8] The prior tenants association had transmitted a letter pursuant to § 31-44-3.1. However, its articles of incorporation had been revoked and, therefore, its corporate existence terminated. Through the exercise of due diligence, Everson and Chimera should have been aware of this revocation by checking the corporation records of the Secretary of State prior to entering the purchase and sale agreement. Therefore, in September 2005, the parties to the sale could properly have relied on the fact that no tenants association could assert a right of first refusal. Graeme J. Everson, President of Everson Construction Inc., states that he did in fact cause his attorney to check those records and confirm that no tenants association existed. (Aff. of Graeme J. Everson ¶ 7, Feb. 7, 2007.)
[9] Chimera has a cross-claim against Everson for any damages incurred if the sale is voided.
[10] Incidentally, the Tenants Association would be well-advised to transmit a certified letter to Chimera pursuant to § 31-44-3.1(a), and do the acts necessary to maintain its corporate existence, if it hopes to take ownership of the mobile home park in the future.